## EDWARD LARKIN v. GEORGIANNA HECKSHER.

1. On *certiorari* to a District Court, by statute, where the amount in controversy exceeds $200, there should be a bill of exceptions, sealed by the judge.
2. A hiring for one year, with monthly payments of wages, is an entire contract.
3. There is no general custom in this state that a person thus hired may be discharged, without cause, on one month's notice, or one month's wages paid.
4. One gardener coming to blows with another, without showing circumstances, and effect on the services due, is not a good cause for discharge during the term.
5. Damages for breach of contract, by unlawful discharge, are limited to such as are actually sustained, measured by the wages, and reasonable diligence to obtain other employment.

---

On *certiorari* to the District Court of Newark.

The facts, as they appear in the case certified by the judge, in the trial before him, without jury, are that the plaintiff was employed by the defendant as gardener, at first for a period of ten successive years; afterwards, when a gardener subsequently employed had died, he was engaged by her for a period of one year from April 10th, 1883, at the rate of $55 per month, for the months from March to November, inclusive, and $50 dollars for the months from December to February, inclusive, payable on the 10th of each and every month. The plaintiff resided off the defendant's grounds, and received an allowance for a cottage on the premises which he had formerly occupied.

At the beginning of each subsequent year, the plaintiff and defendant entered into a contract for that year, on the same terms, to wit, for a year's service. The wages were paid monthly, each and every month, up to October 10th, 1887. About July 15th, 1887, the plaintiff and an undergardener had a disagreement which resulted in blows; the defendant threatened to discharge both men from her service, but allowed them to remain longer, while she sought other servants; they both continued in her employment until October 1st following, when the plaintiff was paid a full month's wages up to October 10th and discharged. Defendant and plaintiff vary in their statements of what occurred between July 15th, 1887, and October 1st, 1887. She says she told him that he must go as soon as she obtained a man in his place, and urged on him the necessity of securing another place for himself. He denies this, and says he repeatedly warned her as to the terms of their contract, that it was for the year. Since October 1st, the plaintiff has been unable to obtain employment, but has endeavored to do so. He has been ready and willing to serve the defendant from that time, and has duly demanded payment of his wages.

Upon the above facts, the judge found that the parties had entered into a yearly contract, which was renewed each year by express agreement, and the plaintiff was discharged, without cause, from the employment of the defendant.

The defendant was adjudged liable for $150 damages, which were awarded for the breach of the contract.

Argued at June Term, 1888, before Justices SCUDDER and REED.

For the plaintiff in *certiorari, Blake & Freeman* and *J. W. Taylor.*

. For the defendant, *McDermit & Maher.*

The opinion of the court was delivered by

SCUDDER, J. ( This *certiorari* is issued directly to the District Court, returnable to this court, under section 13 of the act of 1882 (*Rev. Sup., p.* 263, § 224), and is authorized where the debt, demand or damage in controversy exceeds the sum or value of $200. The plaintiff claims $300 damages in this action.

The section, in its first proviso, says " that no reversal for error of law shall be made, or a new trial granted for the admission or the rejection of evidence, or the refusal of the district judge to grant a new trial, unless exception to the ruling of the court below was taken at the trial and is presented to the court in a bill of exceptions, sealed by the judge." A bill of exceptions must contain the exceptions made to the direction and ruling of the judge, together with so much of the evidence given at the trial as is necessary to make the exceptions intelligible to the court of error, and furnish grounds for the allowance or disallowance of the exceptions. *Ch. Arch. Pr.* 441.

No such formality as the usual bill of exceptions has been tacked to the record and returned with it in this case. But as no objection was made to this defect at the hearing and the facts and rulings of the court sufficiently appear, and are certified by the seal of the judge, the writ will be held and the case decided on the facts found, and the decision and determination of the court thereon.

The hiring was, by express agreement, for one year, although

the payments for service were to be made monthly. This constituted an entire contract. *Beach* v. *Mullen,* 5 *Vroom* 343. The action is brought for a breach of this contract by discharging the plaintiff, without lawful cause, before the expiration of the year for which he was hired, and to recover damages for the loss it has caused him. The only reason which appears in the case for his discharge is that the plaintiff and an undergardener had a disagreement, which resulted in blows. The causes which justify the discharge of servants employed for a certain time, by express agreement, or by implication, are said to be various, and depend much on the nature of the particular employment. They are generally reduced to these classes : willful disobedience of a lawful order; gross moral misconduct; habitual negligence or other serious detriment to the master's interest; incompetence, or permanent disability from illness. They must be in some way connected with the duties of the service. Instances will be found collated in *Schoul. Dom. Rel.,* § 612; *Wood M. & S.,* § 109, &c.; *Sm. Mast. & S.,* § 139, and cases there cited.

The circumstances are not given by which we can judge of the exact character of the plaintiff's offence in this case. A sudden affray in the grounds, resulting in no injury to the mistress' business and employment, would not be good ground for discharge; while a fight in the dwelling-house, causing damage to property, alarm to the employer and her servants, and disturbance to the good order and quiet of her residence, might be good justification for an immediate discharge. On the bare fact given in this case, coupled with the statement that the two contestants were kept in her service for several months afterwards, it does not appear that their misconduct on this one occasion was so injurious as to justify the breach of her contract with a servant who had been in her employment for about fifteen years.

It is said that, without cause, menial or domestic servants may be discharged by general custom or usage, at any time, on one month's notice or a month's wages. The reason given is that contracts for services which bring the parties in such

close proximity and frequency of intercourse that they are valuable only when mutually agreeable, and otherwise intolerably annoying, should be readily terminated at the option of either party. *Schoul. Dom. Rel.*, § 608 ; *Sm. Mast. & S.*, § 92. A head gardener living in a house on his master's grounds was said to be such menial or domestic servant who could be discharged on a month's notice though hired for £100 per year. *Nowlan* v. *Ablett*, 2 *Cromp.*, *M. & R.* 54.

The cases cited, however, are English, and the custom, if there be such in this country, is not so generally known and established as to presume knowledge of it, and an intention in persons making such contract for hiring to incorporate it in their agreement, or annex it as an incident. *Wood M. & S.*, § 2.

In *Tatterson* v. *Suffold Manufacturing Co.*, 106 *Mass.* 56, it was said in a case where three months' notice was given to end a year's employment as superintendent of a factory, that it was an attempt " to import into such engagements a rule of law analogous to that which applies to tenancies of real estate by oral agreement, or to that which governs contracts for domestic service in England. But we are aware of no such rule of law applicable to the case." There is no such general custom in this state ; and if there be a special custom of this character where these parties reside, it should appear that the plaintiff had knowledge of it, and made the contract subject to such qualification.

It is also said that, by remaining after notice, he waived his objection. He testifies that he did not, and insisted on his employment for the year. The act, in itself, is consistent with a purpose to remain so long as he was permitted to stay, and assert his right when finally dismissed.

If he had left immediately, without objection, it might be said he assented to go and abandon his contract.

The refusal of a new trial on the ground of excessive damages, and for the alleged violation of the rule of damages, in such cases, was not erroneous. In actions for breach of contract of hiring brought for a wrongful discharge, soon after

the dismissal, the amount of damages is, usually, a question for the jury to determine, or for the judge where a jury is waived, based on the amount of wages agreed for, or the usual rate for the employment contracted for, where no specific wages have been agreed upon, and estimating what time will reasonably be lost before similar employment can be obtained by using proper diligence. In such case the recovery should be limited to the amount of damages actually sustained by the unlawful discharge. *Wood's Mayne on Dam.*, §§ 277, 279 ; *Howard* v. *Daly*, 61 *N. Y.* 362; *Willoughby* v. *Thomas*, 24 *Gratt.* 522. It must also be considered that where an action for wrongful discharge has been brought, and damages recovered and paid, no other action can be brought upon the same agreement. *Sm. Mast. & S.* 194. The action was begun November 23d, 1887, and judgment rendered January 23d, 1888. Up to that time it does not appear that the plaintiff had obtained or could obtain other employment, although he had endeavored to find it. The damages were not excessive and unlawfully estimated.

Judgment affirmed, with costs.