WALTER L. BURT, Appellant, *v.* WILLIAM H. CATLIN, Respondent.

*Master and servant — when an assault by one servant on another does not justify the discharge of the former.*

Evidence that a servant employed by the owner of a farm to manage a number of horses kept thereon had a personal altercation with the superintendent of the farm concerning the removal of a horse from one stall to another, and that the former struck the superintendent two or three blows, does not justify the owner of the farm in discharging the assailant where, as found by the jury, the discharged servant did not commit the assault until the superintendent had sworn at him and called him a liar.

*Semble*, that in order that an assault by one servant upon another shall justify the master in dismissing the assailant, it must be plainly detrimental to the master's interests and inconsistent with the duties of the servants.

APPEAL by the plaintiff, Walter L. Burt, from an order of the County Court of Westchester county, bearing date the 26th day of January, 1901, and entered in the office of the clerk of the county of Westchester setting aside the verdict of a jury in favor of the plaintiff and granting a new trial of the action.

*Frederick W. Sherman*, for the appellant.

*Grenville T. Emmet* and *Maurice Dillon*, for the respondent.

WILLARD BARTLETT, J.:

This is an action by a servant against a master, in which the servant recovered a verdict of $390 damages against the master for having been illegally discharged from his service before the termination of the contract of employment. The county judge has set

aside the verdict and granted a new trial on the ground that the complaint should have been dismissed upon the defendant's motion and that the verdict was against the evidence, and the plaintiff has appealed.

The defendant employed the plaintiff to manage a lot of horses which were kept upon his farm preparatory to being offered for sale. The superintendent of the farm was Frederick Snyder. Burt and Snyder got into a personal altercation concerning the removal of a horse from one stall to another, Burt insisting that the animal should be moved back, while Snyder desired that the horse should be allowed to remain where he was. The altercation ended with an assault by Burt, who struck Snyder two or three blows. Mr. Catlin, the defendant, upon learning of the assault, discharged Burt from his service, and insists that he was justified in doing so by reason of the fact that the conduct of one servant in thus striking another was so prejudicial to his business that he might lawfully terminate the relation.

The correctness of this position depends upon the circumstances of the personal encounter between the employees.

It is not necessary to restate here the general rules of law relating to the causes which will justify a master in discharging a servant. It is enough to say, generally, that the cause must be in some way connected with the duties of the employment or affect the master's interests injuriously. Speaking more specifically, the mere fact that one of two servants has committed a simple assault upon another servant does not alone and of itself necessarily constitute a justification for the master in discharging the assailant; much depends upon the circumstances of the assault. (*Larkin* v. *Hecksher*, 51 N. J. L. 133.) In the case cited the Supreme Court of New Jersey held that the fact that the plaintiff and an under-gardener had a disagreement which resulted in blows did not constitute a good cause for the discharge of the plaintiff from the defendant's employment in the absence of proof from which the court could judge of the exact character of the plaintiff's offense. "A sudden affray in the grounds," said SCUDDER, J., "resulting in no injury to the mistress' business and employment, would not be good ground for discharge; while a fight in the dwelling-house, causing damage to property, alarm to

the employer and her servants and disturbance to the good order and quiet of her residence might be good justification for an immediate discharge."

In the record before us two very different pictures are presented of the assault which led to the discharge of Burt.

According to the version of the defendant's witnesses, Snyder told Burt that the horse had been removed to the new stall by order of Mr. Catlin himself; Burt thereupon " said he did not give a damn for Mr. Catlin or anyone else," and insisted upon the removal of the horse; Snyder declared that the horse should remain there; whereupon Burt struck Snyder several times, as has already been stated, once upon the face.

This language and conduct, in the presence of other persons in Mr. Catlin's employ, would be so plainly detrimental to the master's interests and so inconsistent with the duties of the service as to warrant the summary dismissal of the offender.

But the jury evidently did not believe this account of the occurrence. Their verdict shows that they must have given credence to the testimony of Burt, who flatly denied that Snyder ever told him Mr. Catlin wished the horse to remain in the stall where he was, and who declared that he did not strike Snyder until the latter said to him, " God damn it, you been telling lies enough?" At this provocation Burt says he lost his head and struck out, hitting Snyder's arm and grabbing his hand, but not striking his face Burt adds that he struck at Snyder again after Snyder had called him a dirty cur.

It will be seen that Burt's version negatives the use of any language reflecting in any way upon Mr. Catlin, and indicates that his use of force was provoked by Snyder's charge that he was a liar. Of course, this provocation did not justify the assault; but we are here concerned not with the question whether Snyder's words constitute a defense in behalf of Burt against a charge of assault, but with the question whether, if Burt's account of the encounter be true, he was guilty of misconduct, for which Mr. Catlin could properly discharge him.

It seems to us quite clear that the dismissal was unwarranted if Burt did no more than he says he did. To resent the imputation of being a liar, to the extent stated, could not harm the master in any essential respect.

The jury must have adopted a view of the facts leading to this conclusion, and we can find no reason in the record why their verdict should not have been allowed to stand. The exceptions taken by the defendant on the trial present no error sufficient to sustain the order appealed from on that ground, and we think there must be a reversal.

GOODRICH, P. J., WOODWARD, HIRSCHBERG and JENKS, JJ., concurred.

Order setting aside verdict reversed, and judgment directed for the plaintiff upon the verdict, with costs.