E. I. DU PONT CO. v. WADDELL.

(Circuit Court of Appeals, Fourth Circuit. February 9, 1910.)

No. 935.

1. MASTER AND SERVANT (§ 43*)—DISCHARGE OF SERVANT—NATURE OF CONTRACT—TERMINATION—QUESTION FOR JURY.

In an action for alleged wrongful discharge of a servant, whether plaintiff's contract was for a year or from month to month subject to termination at the will of either party *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 57, 58; Dec. Dig. § 43.*]

2. MASTER AND SERVANT (§ 44*)—WRONGFUL DISCHARGE—INSTRUCTIONS.

In an action for alleged wrongful discharge of a servant prior to the termination of his contract claimed by him to be for a year, a request to charge, that if the jury believed from all the evidence that plaintiff was employed by defendant in June, 1903, at a specified salary, and that at that time there was no agreement fixing the term of employment, and, if the jury believed that the contract of hiring was of that date, then such employment was a hiring at will, and defendant could without liability discharge plaintiff at any time, was properly refused, as withdrawing from the jury's consideration the facts and circumstances surrounding the transaction in June, 1903, in ascertaining the intention of the parties and the inferences to be drawn from such conditions.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 59; Dec. Dig. § 44.*]

3. MASTER AND SERVANT (§ 44*)—EMPLOYMENT—CONTRACT—CONSTRUCTION—INSTRUCTIONS.

Plaintiff, having been employed by defendant for several years from January 1st to January 1st of the succeeding year, was called to defendant's office on June 17, 1903, and his salary raised to $6,400 per year, a memorandum being made by defendant's president reciting that plaintiff was to be paid "salary of $6,400 per year beginning January 1st, 1903." He was discharged by letter written June 4, 1906, and claimed that his employment was by the year, and did not expire until January 1, 1907. *Held*, that an instruction submitting to the jury the theory that a new contract of annual hiring was made on June 17, 1903, and that the contract term terminated one year from that date and at each succeeding year thereafter, was properly refused, since, if the theory were adopted, the contract would have carried the employment to June 1, 1907; the commencement and duration of the service under the contract being controlled by the intention of the parties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 59; Dec. Dig. § 44.*]

4. APPEAL AND ERROR (§ 1005*)—ASSIGNMENTS OF ERROR—GROUNDS—WEIGHT OF EVIDENCE.

Refusal of the trial judge to set aside a verdict as against the weight of the evidence is not ground for assignment of error or appeal to the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3864; Dec. Dig. § 1005.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Huntington.

Action by Frederic J. Waddell against the E. I. Du Pont Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Herbert Fitzpatrick (Simms, Enslow, Fitzpatrick & Baker, on the brief), for plaintiff in error.

John H. Holt (Holt & Duncan, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and CONNOR, District Judges.

CONNOR, District Judge. Defendant in error instituted this action of assumpsit in the Circuit Court of Cabell county, W. Va., against plaintiff in error for the recovery of the sum of $2,666.67, alleged to be due him for balance of salary. Upon petition of plaintiff in error, the cause was removed into the Circuit Court of the United States for the Southern District of West Virginia, and, by appropriate pleadings, brought to trial before his honor, Judge Keller, and a jury. The defendant in error alleged that he entered into a contract of employment with the plaintiff in error whereby he was to serve and plaintiff in error employed him for the year beginning January 1, 1906, and ending December 31, 1906, at an annual salary of $6,400; that on June 4, 1906, without any good and valid cause therefor, plaintiff in error discharged him, and refused to pay the balance due on account of salary for said year. Plaintiff in error denied that it entered into a contract with defendant in error for annual employment, and averred that the contract was for employment to be terminated at the will of either party. Plaintiff in error further averred that defendant in error during the year 1906, by drinking intoxicating liquor to an excess, had incapacitated himself from discharging the duties of his employment. There was evidence on the part of defendant in error tending to show that he had been in the employment of defendant in error or its predecessor for several years at an annual salary of $5,600, and that, in June, 1903, his salary was raised to $6,400, taking effect from January 1, 1903—the excess from January to June being paid to him in full and from June, 1903, in monthly payments of $533.33. In regard to this phase of the case defendant in error testified:

"Just after January, 1903, I took up the subject of an increased salary. My salary prior to that time had been $5,600 a year. After my yearly reports had been made, I was invited to come from Cincinnati to Wilmington, Del., and then I took up the subject of salary. After discussing the matter for some time, it was agreed between Mr. Eugene Du Pont and myself that my salary should become $6,400 per year—current year—from January to January, provided that he paid me—he refunded me, or paid me extra from June back to the preceding January 1st, when my contract took effect."

He further testified that he had been in the employment of the Hazard Company since 1882; that his employment had always been from January to January.

Plaintiff in error introduced Eugene Du Pont, who testified that defendant in error came to Wilmington in June, 1903, to take up

question of salary. Witness and defendant were the only persons present. He said:

"We entered into a verbal contract under the date of June 17, 1903, whereby the compensation of Mr. Waddell was set at the sum of $6,400 per year. It was to be paid monthly on a monthly basis. As a matter of adjustment, to satisfy him, I agreed to date—to make the adjustment date back to the first of the year. Nothing was said with reference to the length of time for which he was employed."

Witness made, at the time, a memorandum of the agreement: "June 17, 1903. F. J. Waddell to be paid salary of $6,400.00 per year beginning January 1, 1903." Checks were sent him monthly. There was other testimony bearing upon the character of the contract of employment in respect to the time, etc. It was in evidence that, after some correspondence between plaintiff in error and Waddell in regard to his use of intoxicating liquors, on June 4, 1906, the vice president of plaintiff in error wrote him a letter in which he said:

"It is with a great deal of regret that I hear of the absolute violation of the promise given me only a few months ago, to the effect that never again would I have cause to communicate with you regarding your habit of excessive drinking. I find that you have been drunk and incapable of performing your duties and this, together with the fact that in the past your continued relapses of this kind have become such a matter of notoriety as to make them common causes of comment among our customers, makes it necessary for you to be superseded by some one else in the care of our interest at Huntington. Will you, therefore, consider this letter as discontinuing your employment from and after August 1, 1906, to which date your salary will be paid in due course."

The other portions of the letter refer to the details involved in his retirement from the employment, expressions of good will, etc.

A number of witnesses were examined by each party in regard to the habit of defendant in error in the use of intoxicating liquor as affecting his capacity to give proper attention to the business intrusted to him in the scope of his employment. The evidence was contradictory and, in many instances, difficult to reconcile. Plaintiff in error introduced letters and witnesses tending to establish its contention, and defendant in error, in addition to the testimony of witnesses sustaining his contention and contradicting the testimony introduced by plaintiff in error, testified in his own behalf, as follows:

"In response to the question of counsel this morning you stated that during the employment of yourself by the defendant, or at times during that employment, you drank more or less whisky. I will now ask you the question whether or not you ever at any time pending that employment by reason of drink or otherwise neglected the defendant's business? A. I did not. Q. I will further ask you whether or not you drank during that period of time to such an extent as to impair your capacity to properly attend to the defendant's business? A. I did not."

At the conclusion of the evidence, counsel for plaintiff in error submitted the following request for instructions:

"(1) The court instructs the jury to find for the defendant.

"(2) The court instructs the jury that if they believe from all of the evidence in this case that the plaintiff, F. J. Waddell, was employed by the defendant in this case in the month of June, 1903, at a salary of $6,400 per year, and that at that time there was no mutual agreement fixing a definite

term of employment, and if they further believe from all of the evidence that the contract of hiring was of the date aforesaid, then such employment was a hiring at will, and the defendant, the Du Pont Powder Company could without liability, discharge the said Waddell at any time, and they should find for the defendant.

"(3) The court instructs the jury that if they believe from all of the evidence that when, on June 14, 1903, the contract of employment in this case sued upon was made between the plaintiff, F. J. Waddell, and the defendant, the Du Pont Powder Company, that it was understood and agreed between the parties that the plaintiff should be employed for the fixed and definite term of one year, and that if they further believe that the said year was to extend from June 14, 1903, to June 14, 1904, and that although compensation was paid the said Waddell covering the period from January 1, 1903, that it was the intention of the parties so contracting to begin the employment June 14, 1903; and if they further believe from all of the evidence that the said Du Pont Powder Company discharged the said F. J. Waddell on the 4th day of June, 1906, without cause, then the finding of the jury should not be in excess of the proportionate part of a month's wages due the plaintiff for the said 10 days, less the amount by him during that period earned.

"(4) The court instructs the jury that if they believe from all of the evidence in this case that when the plaintiff, F. J. Waddell, was employed by the defendant, the Du Pont Powder Company, there was no mutual understanding or contract fixing a definite term of employment, then it is presumed that the hiring was at will, and unless they believe from all of the evidence, by a preponderance thereof, that such definite term was fixed by contract, then the defendant has the right to discharge the said plaintiff at will without liability. Which instructions, and each of them, being objected to by the plaintiff, the court refused to give, to which action of the court in refusing to give the said several instructions, and each of them, numbered as before stated, the defendant excepted."

His honor instructed the jury:

"The case divides itself, under the pleadings, into two branches. There are two inquiries, the determination of one of which may render it unnecessary to go into the other, according as you determine that from the proofs in the case. The first of these is as to whether or not the plaintiff has proved, by a preponderance of the evidence, a determinate hiring for a year or from year to year. This is essential, and that burden was upon him to prove to your satisfaction by a preponderance of the evidence that this hiring was not what we call a general hiring for an indeterminate time, but that it was a hiring for a definite, determinate time, namely, from January 1st to January 1st. The general principle is a true one, and I will give you a true instruction to that effect that I have been asked to give you, that an indeterminate hiring is to be denominated as a hiring at will and may be terminated by either party, without notice; and it is only in the event that you determine that a contract existed between the plaintiff and the defendant for a hiring from year to year—that is, from January 1st to December 31st—that the further consideration of the other questions involved becomes necessary, because, if you do not find that a hiring existed from January 1st to December 31st, this defendant, without giving any reason and without any cause, had a right at any time to terminate that service, and, under the circumstances proved in this case, there could be no injury to the plaintiff by so terminating the employment."

In regard to the alleged excessive use of intoxicating liquors, the court instructed the jury as requested by plaintiff in error:

"A master may discharge an employé for incompetency and that a presumption of such incompetency may arise from the excessive use of alcoholic liquors, and, if the jury believe from all of the evidence that after employment by the defendant, and that after the 15th of February, 1906, and prior to the 1st of June, 1906, the said Waddell did so use such liquors, then the defendant

had a right, without liability, to discharge said plaintiff, and they shall find for the defendant.

"The court instructs the jury that if they believe from all of the evidence that between February 15, 1906, and June, 1906, the plaintiff, F. J. Waddell, drank intoxicating liquors to excess, and that while in the employ of the defendant, the Du Pont Powder Company, the business of the said company was neglected as a result of such habit, that then the defendant had the right to act upon the knowledge of such conduct and discharge the said Waddell, and they should find for the defendant."

The jury found for the defendant in error, assessing his damages at $3,657.37—for which the court rendered judgment. Plaintiff in error assigned for error (1) the refusal to give instructions 1, 2, 3, and 4, as set out; (2) the entire charge; (3) refusal to set aside the verdict.

The first instruction asked by plaintiff in error is founded upon the assumption that taking all of the evidence introduced by defendant in error to be true, and all reasonable inferences most favorable to him, as a matter of law he was not entitled to recover. The learned counsel for plaintiff in error insist that the entire contract is comprised in the conversation had between the parties in Wilmington, Del., on June 17, 1903, and that its terms are correctly set forth in the memorandum made by Mr. Du Pont. If no more appeared than the occurrence of that day and that the contract of employment was then and there made, there would be much, probably controlling, force in the position of counsel; but, when we look to the entire testimony, especially that of the defendant in error, we find evidence tending to show that no new contract was made on that day, that a contract of employment of several years' duration was then in force, that the only change made in the existing contract was an increase in salary. Waddell says that he was invited to go to Wilmington to take up the question of salary. He was then employed, he claims, by the year at $5,-600, and the only change made in the contract was that he was to receive $6,400, relating back to January 1, 1903. This view seems to have been recognized by the president of the plaintiff in error, both in his testimony and by his conduct. It is entirely probable that as testified nothing was then said in regard to the time the employment was to continue. The trend of the evidence tends to show that both parties recognized the existence of a contract of employment the terms of which, except as to salary, were not to be changed. It is true, as said by counsel and sustained by authority, that, nothing more appearing, the language used by the parties would be controlling in fixing the duration of the relation of employer and employé. We must, however, look to surrounding circumstances, the relations then existing, the character of the employment, and if, after doing so, the meaning of the language used and the intention of the parties is doubtful, or capable of more than one construction, the question should be submitted to the jury. In this record the defendant in error says:

"My employment had always been by the year prior to the increase in salary—being from January 1st of one year to January 1st of the following year."

This, together with other evidence, certainly precluded his honor from taking the case from the jury, and holding, as matter of law, that the contract of employment was either from month to month or subject to be terminated at the will of either party. In this aspect of the case his honor properly refused the first instruction. The vice in the second instruction consists in withdrawing from the consideration of the jury the facts and circumstances surrounding the transaction of June 17, 1903, in ascertaining the intention of the parties and the inferences to be drawn from such conditions. The next instruction (numbered 5) submits to the jury the theory that a new contract of annual hiring was made on June 17, 1903, adopting that day as the beginning of the employment; thus concluding that the term of employment came to an end on that day of the year 1904 and each succeeding year. We do not think the evidence, in any reasonable aspect, capable of that interpretation. Neither of the parties so understood the contract. The memorandum made by Mr. Du Pont is "F. J. Waddell to be paid salary of $6,400 per year beginning January 1, 1903." The letter discharging Waddell was written on June 4, 1906. If the theory involved in this instruction be adopted, the contract would have carried the employment until June 1, 1907. His honor correctly declined to give the instruction. The correct principle sustained by authority is thus laid down:

"The commencement and duration of service under a contract of employment is controlled by the intention of the parties, as gathered from the terms of the contract, the circumstances surrounding the transaction, and the object had in view." 26 Cyc. 972.

In Edwards v. Railroad, 121 N. C. 490, 28 S. E. 137, the entire contract was in writing. There was no existing contractual relation between the parties, nor any other condition or circumstance throwing light upon the intention of the parties. The court followed the elementary principle that in such cases the construction of the contract was for the court. There was nothing requiring the aid of the jury. His honor placed upon the defendant in error the burden of showing that the contract was for annual employment. We find no error in the charge. It was full, fair, and presented every phase of the testimony. We have made only a short excerpt, deeming it unnecessary to copy it in full.

Plaintiff in error relies upon Martin v. Insurance Co., 148 N. Y. 117, 42 N. E. 416. It must be conceded that the opinion in that case strongly tends to support its contention. Bartlett, J., says that the correspondence between the parties tends to show that plaintiff, when he wrote his first letter, did not consider that he was rendering service under a contract by the year, and his assumption of that position in the second letter has the appearance of an afterthought. How much weight this observation had on the mind of the court is not clear. A much more satisfactory discussion is found in the opinion of Ruger, C. J., in Adams v. Fitzpatrick, 125 N. Y. 124, 26 N. E. 143. There the plaintiff was employed as a salesman at the rate of $3,000 per annum from October 15, 1885, to November 1, 1886. He continued the service until May 1, 1887, when he was discharged.

He sued for balance of salary. The referee found that the original contract was for the year and that it continued on same terms as to duration. The court sustained the finding, saying:

"The evidence, as well as the finding of the referee, showed that the parties originally contemplated a hiring for a year, and this is strengthened by the fact that an annual compensation was agreed on."

In Chamberlain v. Detroit Stove Works, 103 Mich. 124, 61 N. W. 532, the court said:

"What the relation was, and how long it was to continue, depended upon the original hiring, the subsequent relation, the nature of the service performed, and the mutual understanding of the parties. As to duration, we think it was competent for the jury to determine from the evidence that the hiring was annual, and not subject to revocation or change by the board of directors or the president." Kirk v. Hartman, 63 Pa. 97; Larkin v. Hecksher, 51 N. J. Law, 133, 16 Atl. 703, 3 L. R. A. 137.

In view of these authorities, as well as upon principle, we think his honor correctly placed upon the defendant in error the burden of showing that the contract was for annual employment, and we think there was evidence to sustain the finding of the jury. The exception in that respect cannot be sustained. The next exception is based upon the assumption that, upon the whole evidence, it appeared that defendant in error used intoxicating liquor to such an extent as to disable him for that kind and degree of service to which the plaintiff in error was entitled. The principles governing the rights and duties of employer and employé in that respect are elementary. As said by his honor, the right of the servant to be retained is dependent upon his giving to the master full and faithful service to the measure of the ability that is in him, using his due efforts to that end and "anything done by the servant, willfully done, that renders him unable to respond in full measure, is a thing he has no right to do, whether it be the habit of drinking to excess or any other habit that renders him unable to fill the term of the service. If he does these things, it constitutes ground for discharge."

His honor explained to the jury the testimony and its relation to the issue in regard to the alleged cause for discharge, and, in addition to a general charge, gave an instruction as asked by the plaintiff in error and in regard to which there is no exception. The real controversy in respect to this aspect of the case is based upon the proposition that the weight of the evidence was against the defendant in error, and that his honor should have set aside the verdict. Upon well-settled rules of practice, his refusal to do so is not ground for assignment of error. While we are impressed by the weight of the testimony in this respect and the forbearance of the plaintiff in error, yet the question as to its weight, in the light of the whole testimony, was for the jury originally, and for the exercise of his honor's discretion upon the motion to set aside the verdict. The cause was tried twice. The first jury failed to agree.

Upon a careful review of the entire record, in the light of the assignments of error, we find no reversible error. The judgment must be affirmed.

Affirmed.