Chase, J.
 

 This action is brought on a promissory note, of which the following is a copy:
 

 “$2,500.00 New York,
 
 Oct.
 
 8, 1909.
 

 “ Six months after date we promise to pay to the order of ourselves, Two thousand five hundred & 00/100 dollars at Newton Trust Co., Newton, N. J., value received.
 

 “JAMESTOWN MANTEL CO.
 

 “Geo. M. Turner,
 
 Treas.”
 

 Said note was indorsed “Jamestown Mantel Co., Geo. M. Turner, Treas.,” and it was thereafter delivered to and discounted by the Newton Trust Company, the assignor of the plaintiff. It is the last one of a series of like notes, the original of which was given in August, 1907. At the times herein mentioned the trust company had an investment committee- consisting of Hough, its president, Searing, its vice-president, and George, a director. Searing and George were partners doing business in New York city. In August, 1907, Searing was the president of the Delaware and Eastern Railroad Company. One Welch, an attorney at law, had done business as such for said railroad company and for Searing individually. Welch asserted that the railroad company and Searing owed him considerable money for services; he told Searing that he
 
 *154
 
 needed money for his immediate use, and Searing said to him that the company was not in a position to pay him at that time, but that if he would borrow a note from somebody for a short time, he, Searing, would have it discounted at one of his trust companies. Welch went to Turner and told him that he wanted to borrow a note of the Jamestown Mantel Company for $2,500 to have it discounted, and that if he, Turner, would furnish him with such a note he would take care of it when it was due.
 

 Turner in the name of the mantel company, and in the form shown, made and indorsed a note for $2,500, and gave it to Welch. Welch delivered it to Searing, who sent it to the trust company, and received in return for it a draft of $2,425, being the amount of the note less the discount thereon. Searing retained the proceeds of the draft and told Welch that his trust companies were not in funds to discount the note. Before the note became due, however, Searing told Welch that the note had been actually discounted and that he had used the money. It was thereafter renewed from time to time until the note now in suit became due when further renewals were refused by the mantel company and it also refused to pay the note.
 

 The defendant was in no way directly or indirectly interested in the transaction. The note was given in its name wholly without authority. , If Searing was acting for and on behalf of the trust company, it is of course chargeable with his knowledge that the note was borrowed for discount to accommodate Welch and Searing and the defendant is not liable thereon. If he was not acting for and on behalf of the trust company then he was acting independently of it and the trust company is in no way chargeable with his knowledge or information.
 

 The first question for consideration. on this appeal is whether the knowledge of Searing, under the circumstances disclosed, is attributable to the trust company. We think not.
 

 
 *155
 
 Searing conceived the idea of obtaining money from the trust company on a note to he borrowed for the purpose, and he was the one actively engaged in carrying out the plan. In carrying it out he was reckless of the consequences to the trust company. In all the transaction he acted for himself individually or in his capacity as president of the Delaware and Eastern Railroad Company. There was no meeting of the investment committee of the trust company and no action thereon by it as a committee. Searing acted at his place of business and not at the place of business of the trust company, and wholly independent of his official relation to it. His knowledge was intentionally concealed from the trust company with the fraudulent purpose probably formed at the time the note was first suggested of retaining the proceeds thereof for himself. If we admit that the evidence is insufficient to justify the conclusion that Searing intended to keep the proceeds of the note for his personal use when he first suggested to Welch that he borrow a note to he discounted, it must at least he conceded that he either intended at that time to obtain the money for his personal use or to use it for the benefit of the corporation of which he was president. Searing is a lawyer, and he must have known that the note being entirely apart from the business of the corporation was not a binding obligation upon it. In any event the concealment of his knowledge from the trust company was necessary to enable him to obtain from it the proceeds of a note which he knew had been executed without authority, and which would at least he of doubtful value in the hands of the trust company. The trust company should not he held cognizant of his knowledge.
 
 (Brooklyn Distilling Co.
 
 v.
 
 Standard Dis. & Dist. Co.,
 
 193 N. Y. 551.)
 

 There are other objections to the plaintiff’s recovery upon the note that are fatal to his contention. The defendant is a domestic manufacturing corporation. A corporation is an artificial entity having only such powers as are given
 
 *156
 
 to it by law and such implied powers as are necessary to the exercise of the powers expressly given to it. The defendant was organized to “manufacture wood mantels, interior finish, bank, office and bar fixtures and generally to carry on any manufacturing business which can conveniently he carried on in conjunction with any of the matters aforesaid.” The treasurer of the defendant corporation had no express authority by its by-laws or otherwise to sign or indorse a promissory note. The president of the trust company had never had a transaction with the defendant corporation and did not know its treasurer. He does not remember that Searing said anything to him whatever at the time the note was sent to him for discount. It was taken by him on behalf of the trust company without inquiry either as to the responsibility of the corporation or as to the authority of its treasurer to make a promissory note even in the usual course of its business. It affirmatively appears as we have seen that the treasurer had no express authority to make a promissory note, and that the note as made was not made in the regular transaction of the business of the corporation, but wholly as an accommodation to a friend of such treasurer.
 

 A manufacturing corporation has no power to make or indorse notes for the accommodation of others.
 
 (National Park Bank of N. Y.
 
 v.
 
 Ger. Am. M. W. & S. Co.,
 
 116 N. Y. 281;
 
 Fox
 
 v.
 
 Rural Home Co.,
 
 90 Hun, 365; affd. on opinion below, 157 N. Y. 684.) One who deals with the officers or agents of a corporation is bound tp know their powers and the extent of their authority.
 
 (Alexander
 
 v.
 
 Cauldwell,
 
 83 N. Y. 480.) Notwithstanding the general rule stated, a corporation is bound if it makes or indorses commercial paper for the accommodation of another in respect to a
 
 bona fide
 
 holder who discounts it before maturity on the faith of its being business paper.
 
 (Mechanics' Banking Association
 
 v.
 
 N. Y. & S. White Lead Co.,
 
 35 N. Y. 505.) The decision in the
 
 White Lead Co. Case (supra)
 
 and
 
 *157
 
 other similar decisions are based upon the assumption that the officers making or indorsing a promissory note had authority from the corporation to make and indorse such notes in the ordinary course of its business. Such decisions do not apply to a case where the officers purporting to act for a corporation do not have authority to sign commercial paper in the ordinary course of its business. A treasurer of a manufacturing corporation has no power to make promissory notes in its name unless such power is expressly given to such officer by the bylaws of the corporation or by resolution of its board of directors. (Thompson on Corporations [2d ed ], sec. 1564; Daniels on Negotiable Instruments [5th ed.], vol. 1, sec. 394; Edwards on Bills, sec. 65; Beach on Private Corporations [2d ed.], vol. 2, sec. 804;
 
 McCullough
 
 v.
 
 Moss,
 
 5 Denio, 567;
 
 National Bank of Newport
 
 v. Snyder
 
 Mfg. Co.,
 
 107 App. Div. 95;
 
 Niagara Falls Susp. Bridge Co.
 
 v.
 
 Bachman,
 
 66 N. Y. 261;
 
 Dabney
 
 v.
 
 Stevens,
 
 40 How. Pr. 341;
 
 Marine Bank
 
 v.
 
 Clements,
 
 3 Bosw. 600;
 
 National Bank of the Republic
 
 v.
 
 Navassa Phosphate
 
 Co., 56 Hun, 136;
 
 People's Bank
 
 v.
 
 St. Anthony's R. C. Church,
 
 109 N. Y. 512.) No presumption existed that the defendant’s treasurer had power to make or indorse business paper. It was necessary, therefore, for the plaintiff to show that the treasurer had authority to execute promissory notes in the name of the corporation in the ordinary course of its business, or that the defendant was estopped from denying such authority.
 

 It is urged that there is some evidence that the treasurer of the defendant had on one or more occasions signed a promissory note in its name in the regular course of defendant’s, business, and that such note or notes.had thereafter been paid by the corporation. It does not appear that said treasurer had ever signed such a note prior to the execution of the note which was given in August, 1907. Whether he had done so or not is of little importance for the purpose of creating an estoppel
 
 *158
 
 against the defendant, hecanse it affirmatively appears that the trust company did not know of any of the acts claimed to have been done by the defendant’s treasurer in its name.
 

 If the defendant had, prior to August, 19 01, in the usual course of its business permitted its treasurer from time to time to make promissory notes in its name which it ratified and approved by paying them, and knowledge of such acts had come to the trust company, and it had relied upon such acts as showing authority in the defendant’s treasurer to make promissory notes in its name in taking the note in controversy, a question of estoppel would have arisen as against the defendant in this action.
 

 It is essential for one claiming that another is equitably estopped from denying liability because of his previous acts and conduct to show that he was influenced by and relied upon such acts and conduct in making the promise or performing the act upon which the liability is asserted.
 
 (Draper
 
 v.
 
 Oswego Co. Fire R. Assn.,
 
 190 N. T. 12, 16.) The defendant is not estopped from denying its liability in this case. If the president of the trust company had made inqiliry in regard to the practice of the defendant in making promissory notes and the authority of its treasurer to sign its name to such notes, and he had ascertained all the facts presented by the record, there would have remained a question of fact as to whether the inquiry was a reasonable one, and whether the facts shown were sufficient to warrant the action of the trust company in.discounting the note in question.
 

 It may also be assumed that the record presents a question of fact as to whether Turner as the treasurer of the corporation had authority to sign promissory notes in the usual course of defendant’s business by reason of one or more notes having been signed by him which were thereafter paid by the corporation.
 

 The plaintiff at the trial insisted that the court direct a
 
 *159
 
 verdict, and it having directed a verdict for the defendant the plaintiff is bound by the decision of the court upon all questions of fact then open for its determination.
 

 There is evidence on which the trial court was authorized to make the findings necessary oh which to base its direction of a verdict for the defendant.
 

 The judgment should be affirmed, with costs.
 

 Willard Bartlett, Oh. J., Werner, Hiscock, Collin, Hogan and Miller, JJ., concur.
 

 Judgment affirmed.