**Louis J. GUMPERT, Plaintiff-Appellant,**

v.

**The BON AMI COMPANY, Defendant-Appellee.**

**No. 87, Docket 24736.**

United States Court of Appeals
Second Circuit.

Submitted Nov. 15, 1957.

Decided Jan. 17, 1958.

Joseph J. Silverman, New York City (Benjamin H. Siff, New York City, of counsel), for plaintiff-appellant.

Lehrich & Lehrich, New York City (Hyman D. Lehrich and Gilbert S. Edelson, New York City, of counsel), for defendant-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

CLARK, Chief Judge.

In this action for unpaid salary, plaintiff, Gumpert, alleged and testified that on June 1, 1955, Arthur Rosenberg, a director and member of the executive committee of defendant's

board of directors, orally hired him as vice president in charge of sales and advertising of defendant for one year at a salary of $25,000 cash and $25,000 in defendant's stock, and that before the end of the year he was wrongfully discharged. After the jury brought in a verdict of $10,416.65 in favor of Gumpert, the court gave defendant judgment, notwithstanding the verdict, on the ground that Gumpert had failed to prove Rosenberg's authority to hire him. Gumpert appeals.

As plaintiff testified, he was a retired executive previously employed in the cleanser field. Through the offices of a mutual friend he was put in contact with Arthur Rosenberg, who was interested in obtaining for defendant a new executive to increase sales of defendant's cleaning products. Gumpert and Rosenberg met for the first time on June 1, 1955, in Rosenberg's hotel room to discuss employment of Gumpert by defendant. Rosenberg represented that he was executive vice president of defendant and that the defendant was owned and controlled by Rosenberg and two others. After some discussion of terms of employment, Rosenberg orally hired Gumpert for one year at a salary of $25,000 in cash and $25,000 in common stock of defendant—the latter to be delivered before or at the end of the contract term. Plaintiff further testified that Rosenberg asked him to keep quiet about the stock to allay jealousies among other executives and told him to commence work on June 6, 1955. Plaintiff assumed the duties of vice president on that day and was paid every two weeks at the rate of $25,000 a year. He was discharged the following December, having already received $14,583.30.

Defendant vigorously denied that Rosenberg hired plaintiff on June 1, 1955. It maintained that Rosenberg and Gumpert discussed employment on that day, but that Gumpert was hired on June 2, 1955, for an indeterminate period at a salary payable on the basis of $25,000 a year. Rosenberg testified that this took place at an executive committee meeting which Gumpert attended. The minutes of that meeting record that Gumpert was present and further state: "The Committee acted upon the following matters: 1. Authorized the employment of Louis J. Gumpert as Vice President in charge of Sales and Advertising at a salary of $25,000. per annum." Gumpert denied having been present at the June 2 meeting or having communicated with any officer or director of defendant between June 1 and June 6—the day he commenced working for defendant.

Defendant also denied that Rosenberg had authority to hire Gumpert and pointed to its bylaws which invest such authority in the board of directors or executive committee. Gumpert argued that the executive committee's resolution of June 2 proved that Rosenberg must have had authority to hire him because it was passed without the Committee's hearing anything from him. Defendant maintained that the authorization was a reflection of what had occurred on June 2, the day it claimed Gumpert was hired. Gumpert also pointed to the testimony of Clark, secretary and treasurer and later general manager, president, and treasurer of defendant, to prove that Rosenberg must have had authority to hire plaintiff. Clark testified that Gumpert was considered officially hired on June 1, 1955. He was uncertain of the date of the executive committee meeting and whether Gumpert was considered officially hired before or after that meeting.

The jury's verdict of $10,416.65, which is the difference between what Gumpert had received and $25,000, was inconsistent with the proof of either party. The jury must have found either that a one-year contract was entered into on June 2 or that Rosenberg had the authority and hired Gumpert on June 1 for one year at $25,000. Neither side argued for this result: Gumpert claimed a $50,000 contract on June 1, which defendant denied, while defendant claimed a contract at will on June 2, which Gumpert denied.

■ · On this appeal we must resolve all conflicts in evidence in favor of plaintiff and view the evidence in a light most favorable to him. Dailey v. Palmer, 2 Cir., 161 F.2d 960; Caten v. Salt City Movers & Storage Co., 2 Cir., 149 F.2d 428; Nattens v. Grolier Soc., Inc., 7 Cir., 195 F.2d 449. Granting both these presumptions, there was only a glimmer of evidence from which to infer authority and a complete failure of proof of the contract upon which the verdict must have been based.

■ ■ Gumpert first contends that Rosenberg was · actually authorized to hire him on the alleged terms. The defendant's bylaws clearly invest such authority only in the board of directors or the executive committee. To sustain this contention, therefore, Gumpert must show that the executive committee delegated ·this. authority to Rosenberg. See Ford v. Magee, 2 Cir., 160 F.2d 457, certiorari denied 332 U.S. 759, 68 S.Ct. 58, 92 L.Ed. ·345. There is no direct evidence of an express delegation. At best there are only three items of circumstantial evidence to support Gumpert's claim that such delegation must have been made. This evidence consists of the executive committee's resolution of June 2, Clark's testimony that Gumpert was considered officially hired on June 1, and the fact that just prior to June 1 Rosenberg informed two of the other four members of the executive committee that he was going to interview Gumpert. But we agree with Judge Dimock that in the context of all the evidence presented this was scanty proof to support a finding of actual authority. First, the resolution on its face appears to authorize the hiring of Gumpert in the future. Retrospectively applied, it appears at most to be a ratification of an unauthorized hiring on the terms prescribed in its text. It is hardly a recognition that Rosenberg previously had been delegated the authority to hire Gumpert on terms unmentioned in the resolution itself—the very proof proffered of the "authorization." Second, Clark's testimony is particularly meaningless because, as he admitted, he was unsure of the dates important to the controversy and could not remember whether Gumpert was considered officially hired before or after the executive committee meeting. The juxtaposition of these two dates is crucial to the circumstantial value of this testimony as to when defendant officially considered Gumpert hired. Third, Rosenberg's telephone conversations with two of the five members of the executive committee mean little unless it can be shown that these members knew that Rosenberg was negotiating with Gumpert and assented to the hiring of Gumpert at Rosenberg's discretion. This was not shown by Gumpert; Rosenberg himself testified that in these conversations he merely informed the two members that he was going to talk to Gumpert.

■ ■ Gumpert also asserts that Rosenberg's position with defendant carried with it the authority to hire him. He means either that Rosenberg's position as director and executive committee member invested him with the inherent or incidental authority to hire vice presidents or that defendant clothed Rosenberg with apparent authority to undertake such action. Inherent or incidental authority is a species of actual authority and means that the position or status of a particular agent normally carries with it certain powers to bind the principal. See Mechem, Outlines of Agency § 43 (4th Ed. 1952). Rosenberg, at the time, was a director and member of the executive committee of defendant's board of directors. Neither of these positions normally carries with it the inherent power to hire corporate officers, for that authority is normally invested in the board or committee as a body. Gerard v. Empire Square Realty Co., 195 App.Div. 244, 187 N.Y.S. 306; Knapp v. Rochester Dog Protective Ass'n, 235 App.Div. 436, 257 N.Y.S. 356; Bayer v. Beran, Sup., 49 N.Y.S.2d 2, 11.[1] The lack of such

---

1. This position is to be distinguished from that of an executive officer of a corpora-
tion who normally has the inherent power to enter employment contracts on be-

inherent power is emphasized in this case where Rosenberg is alleged to have offered Gumpert a most unusual employment contract whereby Gumpert was to receive stock of defendant as part of his compensation. Even if Rosenberg was chief executive officer of defendant, it is doubtful that he would possess power to make such an arrangement as a normal incident of his position. Cf. Noyes v. Irving Trust Co., 250 App.Div. 274, 294 N.Y.S. 2, affirmed 275 N.Y. 520, 11 N.E.2d 323.

■ Likewise Gumpert failed to show that Rosenberg was held out by defendant to possess the alleged authority. Gumpert had never met Rosenberg prior to June 1 and knew from no source other than Rosenberg of Rosenberg's supposed status in defendant's corporate setup. Practically all of Gumpert's testimony concerning Rosenberg's importance to defendant's operations is based on incidents and observations occurring after Gumpert commenced working for defendant.[2] These incidents are irrelevant in considering Rosenberg's apparent authority on June 1 and could not have misled Gumpert at that time. Jacobus v. Jamestown Mantel Co., 211 N.Y. 154, 105 N.E. 210; Bussing v. Lowell Film Productions, Inc., 233 App.Div. 493, 253 N.Y.S. 719, affirmed 259 N.Y. 593, 182 N.E. 194. Other than these, Rosenberg's alleged misrepresentations provide the sole basis for Gumpert's misplaced reliance on his apparent authority. It is axiomatic that such unauthorized representations of the agent are not a holding

out by the principal and cannot be a basis for apparent authority. Brownell v. Tide Water Associated Oil Co., 1 Cir., 121 F.2d 239; O. A. Skutt, Inc. v. J. & H. Goodwin, Ltd., 251 App.Div. 84, 295 N.Y.S. 772; Bussing v. Lowell Film Productions, Inc., supra.

■ Even had Gumpert succeeded in introducing sufficient circumstantial evidence to warrant a finding that Rosenberg had actual authority to hire him, he must lose, since he failed to prove the contract on which the verdict must have been based. Either Gumpert was hired on June 1 for one year at $50,000 as he "proved" or he was hired on June 2 for an indeterminate period at a salary of $25,000 a year as defendant "proved." There was no evidence that he was hired on June 1 for one year at $25,000 or on June 2 for a one-year term at that salary. Plaintiff gambled for a big recovery and in so doing failed to provide a basis in the evidence for the more modest verdict he would now accept. Thus, even if the trial court was in error in basing its judgment solely on the point of authority, the judgment must be affirmed.

Judgment affirmed.

LEIBELL, District Judge (dissenting).

The majority opinion states that the "jury's verdict of $10,416.65, which is the difference between what Gumpert had received and $25,000, was inconsistent with the proof of either party." Although the jury's verdict was inconsistent with the *full contention* of each par-

---

half of the corporation. It is questionable, however, whether a normal incident of a corporate officer's power includes hiring other corporate officers without an express delegation of such authority from the board of directors.

2. This testimony, had it related to an earlier period, might have been relevant in determining whether the board of directors and executive committee had ceded to Rosenberg the authority to run the business—and thus by implication had delegated to him the authority to hire Gumpert as a vice president. Ford v. Magee, 2 Cir., 160 F.2d 457, certiorari denied

332 U.S. 759, 68 S.Ct. 58, 92 L.Ed. 345; cf. Madison Trust Co. v. Carnegie Trust Co., 167 App.Div. 4, 152 N.Y.S. 517, affirmed 215 N.Y. 475, 109 N.E. 580. But there is no evidence of Rosenberg's "importance" prior to June 1, 1955, except that he had been a director for only two months and was a senior executive officer of an unrelated corporation—evidence hardly establishing his key role at that time in defendant's operations. Plaintiff's self-serving evidence to piece out an implication of an authority obviously unusual in a publicly held corporation ought not to be pressed beyond the meager limits inherent in its own statement.

ty, considered separately; it is not without substantial support when the evidence of both sides is considered as a whole.[1]

The majority opinion also states that in view of the jury's verdict, the indication is that the "jury must have found either that a one-year contract was entered into on June 2 or that Rosenberg had the authority and hired Gumpert on June 1 for one year at $25,000." I believe the trial record, including the charge of the court to the jury, indicates that the jury must have found that Gumpert was hired by Rosenberg on June 1, 1955, for a term of one year at the rate of $25,000 a year;[2] and that Rosenberg either had actual authority to make such a contract on behalf of defendant corporation; or if Rosenberg lacked the necessary authority to so bind the defendant corporation on June 1, 1955, that the defendant corporation with full knowledge of the terms (as found by the jury) accepted or ratified the contract so made by Rosenberg on its behalf.

On this appeal from a judgment for defendant entered n.o.v. on a jury verdict for plaintiff, an appellate court must resolve all conflicts in evidence in favor of plaintiff and view the evidence in a light most favorable to him; but the majority opinion concludes that "there was only a glimmer of evidence from which to infer authority and a complete failure of proof of the contract upon which the verdict must have been based." In my opinion there was substantial proof to sustain both the authority of Rosenberg and the terms of the contract that the Jury's verdict implies.

The majority opinion holds that even "had Gumpert succeeded in introducing sufficient circumstantial evidence to warrant a finding that Rosenberg had actual authority to hire him, he must lose, since he failed to prove the contract on which the verdict must have been based." To support this holding the majority opinion argues: "Either Gumpert was hired on June 1 for one year at $50,000 as he 'proved' or he was hired on June 2 for an indeterminate period at a salary of $25,000 a year as defendant 'proved.' There was no evidence that he was hired on June 1 for one year at $25,000 or on June 2 for a one-year term at that salary." The last sentence is not what the jury concluded from the evidence. They heard and observed the witnesses. The jury's verdict in the amount of $10,-416.65 is at odds with the assumptions in the majority's argument.

The fact that a plaintiff claims too much under an oral agreement, the existence of which and its terms are highly disputed by a defendant, should not bar him from receiving what the jury concluded was the amount actually due him, where there is substantial evidence to support the jury's verdict.

The contract in the case at bar was made in New York and plaintiff was to

1. Plaintiff claims that he was hired by Mr. Rosenberg, a director and member of the executive committee of defendant's board of directors, on June 1, 1955, for a fixed term of one year, at a salary of $50,000 per year, payable $25,000 in cash and $25,000 in stock of defendant corporation. Defendant corporation denied the making of any such contract on June 1, 1955; and further contended that Rosenberg was never authorized to make any such contract on its behalf; and that plaintiff was hired on June 2, 1955 at the rate of $25,000 a year under a contract terminable at will.

2. Evidently the jury did not believe plaintiff in so far as he claimed that as part of his compensation he was to receive at the end of the year $25,000 in stock. According to Rosenberg the subject of a stock participation, not just for plaintiff but for others as well, was discussed by plaintiff and Rosenberg. Rosenberg testified that he and plaintiff had a general discussion with reference to the stock of defendant corporation at the June 1, 1955 meeting, at which time Rosenberg informed plaintiff that the defendant corporation did not have any stock that it could give to the employees of the company; however, "if the company and its employees who run the company can show good results and have earnings, we probably could have a stock option plan at some future date which would be for the benefit of all employees, and he [plaintiff] would share in that."

have his office in defendant's New York office and we may assume that most of his duties were to be performed here. An excellent discussion concerning what is within the province of the Court and what is not, on the issue of contract construction, is found in the opinion of Judge Andrews in the case of Braxton v. Mendelson, 1922, 233 N.Y. 122, at page 124, 135 N.E. 198:

"As here, the answer may depend on a written contract. In the absence of technical phrases whose meaning is obscure, or of latent ambiguities making the subject-matter of the contract doubtful, the court must construe it. Brady v. Cassidy, 104 N.Y. 147, 10 N.E. 131. Again there may be an express oral contract. This, too, the court should construe. Or the existence of an oral contract may be denied, or its terms disputed. If so, it is for the jury to pass upon its existence and provisions and under proper instructions to give effect to it. Patten v. Pancoast, 109 N.Y. 625, 15 N.E. 893. Or the contract, oral or written, may be ambiguous. Its construction may depend upon the intent of the parties in turn dependent on disputed facts. Then it becomes the duty of the jury again under proper instructions to determine this intent. Or there may be no express contract. One is to be implied from contradictory or disputed circumstances. Once more the jury must decide what was the actual relationship."

In the case at bar the existence and the terms of the oral employment contract claimed by plaintiff were denied by defendant corporation. But it cannot be disputed that plaintiff was hired by defendant corporation on June 1st or June 2nd, 1955; that he actually was in charge of sales and advertising until December 31, 1955; and that he was paid for what he did up to that date at a certain rate. Just what all the terms of his employment were, was for the jury to determine from all the evidence, conflicting or otherwise, under proper instructions from the court.[3]

The jury answered that query when they returned a verdict in favor of plaintiff in the amount of $10,416.65. The jury's verdict clearly indicates that they believed the hiring was for a year at $25,000 a year, that defendant corporation breached its contract when it wrongfully discharged plaintiff on December 31, 1955, and that plaintiff was entitled to the full balance of a year's salary as his damages.

In Stevens v. Pfeifer, 1936, 144 Kan. 487, 61 P.2d 907, plaintiff instituted an action to recover wages due and unpaid. He alleged an oral hiring for 277 days at $1 a day. Defendant contended that plaintiff was paid in full for the days he actually worked and therefore he owed plaintiff nothing. The jury was charged as to the contentions of both parties and returned a verdict in favor of plaintiff for an amount less than what he claimed. On the appeal defendants contended "that under plaintiff's theory of the case, he was entitled to recover what he claimed, or nothing; under defendant's theory of the case, plaintiff was not entitled to recover anything, and the jury disregarded the issues." The court overruled defendants' contentions and affirmed the jury's verdict holding in effect that in an action for wages where-

3. The judge below charged the jury: "So the first question for you to decide is whether Mr. Rosenberg did hire Mr. Gumpert at the meeting of June 1, 1955. Unless you find that he then hired Mr. Gumpert on behalf of the Bon Ami Company for a year at $25,000 cash and $25,000 in stock as compensation, you need go no farther." This was not correct, in view of the fact that plaintiff was claiming under an oral contract of employment, the existence of which together with its purported terms were denied and disputed by the defendant corporation. Under those circumstances it was for the jury to determine whether a contract was made and what its terms were. And if the plaintiff had claimed higher compensation than what he was to receive under the contract as found by the jury, that would not bar him from any recovery at all.

in terms of employment were in dispute and testimony was conflicting, the jury was not obliged to find plaintiff was entitled to all he claimed, or else allow him nothing [at page 908 of 61 P.2d]:

"It was not essential the jury should find wholly for plaintiff on his theory, or wholly for defendants on their theory. The pleadings agreed plaintiff did work for Pfeifer for some time, at some rate of wages, and had received some pay, and the issue was, whether plaintiff was entitled to judgment for something, and if so, for what sum. In determining these issues, the jury believed plaintiff in part and defendants in part. That was within the province of the jury. The verdict was sustained by evidence, and there is nothing this court can do about it."

The jurors in this case could infer from all the proof that plaintiff was hired for a fixed period of one year as he testified. Indeed, the length of time for which he was hired was the basic question on the issue of whether the contract had been breached by defendant. If the hiring had been "at will" on June 1 or 2, 1955, and not for a fixed term of one year, then defendant could discharge the plaintiff and not be held in damages regardless of the amount of the compensation. The jury believed the hiring was for a year. The judge did not charge on the question of a hiring at will. As laymen the jurors could look to the resolution of June 2, 1955, and the record of what plaintiff was actually paid regularly as fixing the total amount of his annual compensation. They were not bound to include anything for the value of the stock in their verdict. A jury may give weight to that part of the testimony of a witness that they believe to be true, and disregard the balance. They are not obliged to disregard all his testimony.[4] And quite naturally they look for something in writing to corroborate oral testimony that is disputed by oral testimony from the other side.

At 2:40 P.M. (May 15, 1957) the jury commenced its deliberations. The extract of the Clerk's minutes filed with the Court on May 16, 1957, indicates that the jury, during its deliberations, sent two notes to the Court requesting to see defendant's exhibit "C"; defendant's exhibit "A" and plaintiff's exhibit 10.[5]

Defendant's exhibit "C" is an extract of the Bylaws of defendant corporation as of June 1, 1955, dealing with the rights and duties of directors and officers of defendant corporation. The exhibit provided that the board of directors may appoint from among their number [8] an Executive Committee composed of five members; and that the Executive Committee may exercise all the powers of the board of directors in the management of the business and affairs of the corporation during the intervals between the meeting of the board of directors. Ford v. Magee, 2 Cir., 160 F.2d 457,

4. The judge below so charged the jury. He stated to the jury: "In this case a great deal depends upon the credibility of witnesses. There have been direct and extremely important conflicts in the testimony. In determining your verdict it is up to you, the jury, to determine what parts of the evidence you believe. That, of course, depends upon your determination of the credibility of the witnesses." The judge then explained what the jurors may take into consideration in determining the credibility of the witnesses who testified before them. He then charged the jury: "If you find that any witness has deliberately falsely testified to a material fact, you have the right to disregard the entire testimony of that witness, or you have the right to accept part of the testimony and reject the rest. It is entirely up to you in the light of what appeals to your reason."

5. At 3:30 P.M. the jury requested to see defendant's exhibit "C." At 3:45 P.M. the jury requested to see defendant's exhibit "A" and plaintiff's exhibit 10. At 5:35 P.M. the jury returned with a verdict in favor of plaintiff in the amount of $10,416.65, which was set aside by the judge below and judgment directed to be entered in favor of defendant corporation with costs.

certiorari denied 332 U.S. 759, 68 S.Ct. 58, 92 L.Ed. 345.

The exhibit also provided under the heading "Officers" the following:

"Section 1. The officers of the corporation shall be a Chairman of the board of directors, if desired, and a president, a first vice-president, a second vice-president, a treasurer and a secretary, all of whom shall be elected by the board of directors to serve for one year and/or until their respective successors shall be duly elected and shall have qualified. [Amended 7/18/40 to provide that officers shall be a chairman, president, vice-president, treasurer and secretary.] Additional vice-presidents may be elected from time to time for such terms as determined by the board, which may also appoint one or more assistant secretaries and one or more assistant treasurers, and such subordinate officers and agents of the company as it may, from time to time, determine."

Defendant's exhibit "A" was the employment record of plaintiff, filled out in most part by plaintiff himself, sometime after he began to work for the defendant corporation. The document contained the date June 1, 1955 in the handwriting of plaintiff on the line entitled "Date Employed" and under the heading "Salary," plaintiff wrote in the figures $25,000 and made no mention of any stock compensation. The minutes of the meeting of the Executive Committee of defendant corporation held on June 2, 1955 (Ex. 10) show that the Committee acting through a quorum (Arthur Rosenberg, Acting Chairman; Maurice A. Hallam; and Lester G. Clark, Acting Secretary) authorized "the employment of Louis J. Gumpert as Vice President in charge of Sales and Advertising at a salary of $25,000 per annum."

Concerning plaintiff's exhibit 10 the Judge charged the jury as follows:

"There is no dispute that the executive committee or the board of directors on June 2, 1955, authorized the employment of the plaintiff at a salary of $25,000 per year. That is not an issue in the case."

On the issue of Rosenberg's authority to act for the corporation in hiring the plaintiff, two questions are presented: whether the record will support a holding to the effect that (1) Rosenberg possessed the required authority to bind the defendant corporation in making an employment contract on June 1, 1955, or (2) if not, whether the defendant corporation acting through its executive committee, accepted or ratified on June 2, 1955, the employment contract negotiated by Rosenberg. An affirmative answer to either question is sufficient to sustain the jury's verdict on that issue. The trial record when viewed in a light most favorable to plaintiff will sustain an affirmative answer to both questions.

On the question of Rosenberg's authority, the majority opinion devotes considerable space to his apparent authority. I agree that plaintiff may not rely upon the "apparent" authority of Rosenberg to sustain the verdict of the jury. The record is barren of any representation made by defendant corporation to plaintiff that Rosenberg was authorized to represent it in making an employment contract with plaintiff on June 1, 1955. Wen Kroy Realty Co. v. Public Nat. Bank & Trust Co., 260 N.Y. 84, 91, 183 N.E. 73. But the "actual" authority of Rosenberg may be shown from all of the circumstances surrounding Rosenberg's activities with the acquiescence of the executive committee of the board of directors.

While the record does not show that Rosenberg was expressly authorized by defendant corporation to act on its behalf in making the employment contract of June 1, 1955, in advance of that date, it does contain sufficient evidence upon which a jury could base a finding that Rosenberg had the "implied" authority to so act on behalf of defendant corporation on June 1, 1955. What is sometimes referred to as "implied" authority is in result "express" or "actual" author-

ity, as expressed by the conduct rather than by the words of the principal, the defendant corporation.

Gumpert testified that at the June 1, 1955 meeting with Rosenberg, Rosenberg stated that he, together with Mr. Cummings and Mr. Hallam controlled the management and affairs of defendant corporation. Mr. Cummings was the chairman of defendant corporation's board of directors and a member of its executive committee. Mr. Hallam likewise was a member of defendant corporation's board of directors and the executive committee. Defendant corporation contends that such testimony is irrelevant, "since it is well established that agency and authority cannot be established by the hearsay statements of the agent himself," citing Brownell v. Tide Water Associated Oil Co., 1 Cir., 121 F. 2d 239.[6]

Gumpert further testified that during his employment wth defendant corporation, he observed that as far as he was concerned, and as far as Mr. Clark and the heads of other departments were concerned, "everything was taken up with Mr. Rosenberg before anything was done. There were constant calls to Mr. Rosenberg with the authority to do anything." Gumpert further testified that the people in the New York office would all make reports to Rosenberg, that whenever he was in Clark's office (Clark was president of defendant corporation), Clark would always contact Rosenberg on any matter of importance.

As to this the majority states: "Practically all of Gumpert's testimony concerning Rosenberg's importance to defendant's operations is based on incidents and observations occurring after Gumpert commenced working for defendant. These incidents are irrelevant in considering Rosenberg's apparent authority on June 1 and could not have misled Gumpert at that time." This may be true when "apparent" authority is the issue, but it is not so when a litigant is attempting to show "actual" authority in a person by the conduct, rather than by the words, of the principal. The evidence was relevant and material to the issue of "implied" actual authority of Rosenberg. From this and other evidence in the case the jury could properly infer the existence of similar authority in Rosenberg as of June 1, 1955. The time interval was short. The majority opinion does not discuss the relevancy of such post-employment "incidents and observations" on the issue of "implied" actual authority. It does hold however in footnote 2 of the opinion that such testimony, "had it related to an earlier period [i.e. before plaintiff was employed], might have been relevant in determining whether the board of directors and executive committee had ceded to Rosenberg the authority to run the business—and thus by implication had delegated to him the authority to hire Gumpert as a vice president." Rosenberg did not hire Gumpert as a Vice-President. He hired him to be in charge of sales and advertising. He had to be elected by the executive committee to be a Vice-President, and that took place on June 2nd.

Evidence tending to show the large part Rosenberg actually played in managing the affairs of defendant corporation, both prior to and subsequent to plaintiff's employment with defendant corporation, and not too remote in time, was admissible and relevant in establishing Rosenberg's actual authority when he made the employment contract of June 1, 1955 with the plaintiff. Olcott v. Tioga Railroad Company, 27 N.Y. 546, 558–560, and Domasek v. Kluck, 113 Wis. 336, 89 N.W. 139. Such testimony if believed would justify a finding that Rosenberg, although senior executive officer of another corporation, nevertheless had a broad control over the manner

---

6. Viewing this testimony separately by itself, defendant's contention has merit. However. there is present in the record other competent proof to show the "implied" authority of Rosenberg.

in which defendant corporation was to operate its affairs generally. Rosenberg became associated with defendant corporation in March of 1955 as a director and as a member of the executive committee of defendant's board of directors. The stockholders elected the eight directors. The directors appointed the five members of the executive committee from among their own members. Rosenberg was not an interloper. He did not have just a casual interest and an insignificant authority in the affairs of the corporation. He was one of the top men. He ranked in authority at least next to the president Clark, as the Cummings' letter of December 9, 1955 (Ex. 8) clearly implies; and Cummings was the chairman of the Board of Directors. Rosenberg was also a large stockholder of defendant in June 1955. According to Exhibit 12, which was read to the jury, a proxy statement dated February 29, 1956, Cummings, Hallam and Rosenberg acquired a beneficial ownership in 17,750, 1,050 and 5,000 shares of Common B stock respectively in March 1955, from the Childs Estate; and additional shares of Common B stock thereafter in the open market; also 4,508, 1,627 and 4,508 of Common A stock respectively in the open market, no date given. Clark had a comparatively small stock interest. Each share of Common A and Common B had one vote.

Rosenberg was not usurping authority, when he orally fixed the terms of Gumpert's employment by the corporation on June 1, 1955. Rosenberg testified that before he met plaintiff on June 1, 1955, he spoke to two other members of defendant's executive committee, Messrs. Hallam and Wood over the telephone and apprised them of the fact that he was going to interview plaintiff for the position occupied by Nelson, the man in charge of sales and advertising for defendant corporation, who was ill; and that he received their approval to do so. It appears from Rosenberg's testimony that he had been looking for such a person as Gumpert for "several months" before June 1, 1955, to be in charge of sales and advertising.

The majority hold that such evidence has little meaning "unless it can be shown that these members knew that Rosenberg was negotiating with Gumpert and assented to the hiring of Gumpert at Rosenberg's discretion. This was not shown by Gumpert." But the record discloses that when the executive committee met on June 2, 1955, Messrs. Rosenberg, Hallam and Clark were present and that plaintiff's employment was then authorized solely on the statement of Rosenberg that he felt he would like Mr. Gumpert to come with the [defendant] company.[7] If, as defendant contends, plaintiff was present for part of the June 2, 1955 meeting, Clark testified that he had no conversation wth plaintiff in connection with his hiring by the defendant corporation and that plaintiff was invited to the meeting after the committee had already authorized his employment.

The evidence, considered as a whole warranted the submission of the issue of Rosenberg's "implied" actual authority on June 1, 1955, when he entered into the employment contract as found by the jury with plaintiff on behalf of defendant corporation. The court in Hedeman v. Fairbanks, Morse & Co., 1941, 286 N.Y. 240, at pages 248–249, 36 N.E.2d 129, at page 133, informs us that:

"Q. What was said at the meeting of this Executive Committee? A. Mr. Rosenberg reported that he felt he would like Mr. Gumpert to come with the company and about the negotiations and salary and *that was that*. [Emphasis supplied.]

"Q. No one else said anything besides Mr. Rosenberg? A. No."

---

7. Clark was asked the following questions by plaintiff's attorney and gave the following answers:

"Q. Who was present at the Executive Committee meeting at which Mr. Gumpert's employment was authorized by the Bon Ami Company? A. Mr. Rosenberg, Mr. Hallam and myself.

"If the question of agency is not open to doubt, it is one for the court. But where no written authority of the agent has been proven, questions of agency and of its nature and scope and of ratification by or estoppel of the principal, if dependent upon contradictory evidence or evidence, though not contradictory or disputed, from which different inferences reasonably may be drawn, are questions of fact to be submitted to the jury under proper instructions by the court."

Assuming *arguendo* that Rosenberg lacked legal authority to bind defendant corporation on June 1, 1955, and on that date made an employment contract with plaintiff on behalf of defendant corporation, there is sufficient evidence in the record to support a jury's finding that on June 2, 1955 the defendant corporation with knowledge of its material terms, accepted or ratified the employment contract in question. Peterson v. Mayor etc., of City of New York, 1858, 17 N.Y. 449, 453; Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 70, 126 N.E. 260, 10 A.L.R. 662, and Knapp v. Rochester Dog Protective Ass'n, 4th Dept. 1932, 235 App.Div. 436, 440, 257 N. Y.S. 356. The contract terms found by the jury to have been made were an employment contract for a definite term of one year and at a yearly rate of $25,000. Defendant corporation concedes that plaintiff was hired at the yearly rate of $25,000, but denies that it was for a fixed term of one year. It claims that plaintiff's contract was terminable at will. The main issue as far as ratification is concerned is whether defendant corporation, acting through its executive committee, in passing the resolution of June 2, 1955, accepted the employment contract of plaintiff with legal knowledge that it was for a fixed term of one year.

Clark testified that negotiations with plaintiff were carried on by Rosenberg and Cummings, and were later "confirmed" by the executive committee of plaintiff's board of directors on June 2, 1955. That would indicate that Rosenberg had legal authority at least to negotiate the terms on behalf of defendant corporation on June 1, 1955;[8] that Rosenberg on June 2, 1955 reported that he would like plaintiff to come with the company and discussed the negotiations and salary terms had with plaintiff; that Rosenberg stated that plaintiff was to receive $25,000 per year; and that plaintiff was considered officially hired as of June 1, 1955.

As regards Clark's testimony concerning the hiring date of plaintiff the majority states: "Clark's testimony is particularly meaningless because, as he admitted, he was unsure of the dates important to the controversy and could not remember whether Gumpert was considered officially hired before or after the executive committee meeting." But Exhibit A (plaintiff's employment record) put in evidence by defendant corporation corroborates Clark's testimony that plaintiff was hired as of June 1, 1955. Further the defendant corporation had access to other records showing the exact date of plaintiff's hiring but did not introduce its official payroll records concerning plaintiff. The checks, check stubs and other bookkeeping entries should have shown the date of Gumpert's employment. As stated in Wylde v. Northern R. Co. of New Jersey, 53 N.Y. 156, 164: "The defendants knowing the truth and omitting to speak, every inference warranted by the evidence should be indulged against them."

The fact that the resolution of June 2, 1955, provided that plaintiff was to be employed "at a salary of $25,000 per annum" does not conclusively estop plain-

8. Clark was asked the following question by plaintiff's counsel and gave the following answer:
"Q. Do you know who on behalf of the defendant hired Mr. Gumpert? A. I believe the negotiations were carried on with him by Mr. Rosenberg and Mr. Cummings *and they were of course later confirmed by the Executive Committee* of the Board of Directors. There was no Board meeting." [Emphasis added.]

tiff from claiming a contract for a definite, determinate time. The cases of Watson v. Gugino, 1912, 204 N.Y. 535, 98 N.E. 18, 39 L.R.A.,N.S., 1090, and Martin v. New York Life Insurance Co., 1895, 148 N.Y. 117, 42 N.E. 416, relied upon by defendant corporation would be applicable to the case at bar if plaintiff was making a claim solely under the resolution of June 2, 1955 without more, or failed to produce proof tending to show he was hired for a term of one year sufficient to have warranted the trial judge in submitting the question to the jury.

Other evidence tending to show the intent of the parties, the surrounding circumstances, the character of the employment, and the like are admissible in determining the issue whether the hiring was for a definite period or not. And one may well ask if a $25,000 a year man would be hired on a day by day basis? The formal corporate resolution is not the final word on that issue. Catholic Foreign Mission Society of America v. Oussani, 1915, 215 N.Y. 1, at page 7, 109 N.E. 80, at page 82 held:

"A formal resolution is not the only evidence of corporate action, Young v. U. S. Mortgage & Trust Co., 214 N.Y. 279, 108 N.E. 418, and cases there cited. Everything that was said and done, the entire setting of the occasion, may help in determining the authority intended to be conferred."

See also E. I. DuPont Co. v. Waddell, 4 Cir., 178 F. 407, at page 411, the court stated:

"It is true, as said by counsel and sustained by authority, that, nothing more appearing, the language used by the parties would be controlling in fixing the duration of the relation of employer and employé. We must, however, look to surrounding circumstances, the relations then existing, the character of the employment, and if, after doing so, the meaning of the language used and the intention of the parties is doubtful, or capable of more than one construction, the question should be submitted to the jury."

The testimony of Clark alluded to above was sufficient to have the issue of hiring submitted to the jury particularly in view of the fact that when the executive committee of defendant corporation met on December 15, 1955, its members were dissatisfied with plaintiff's work performance and methods, and therefore sought an excuse to terminate plaintiff's employment. If plaintiff's hiring was one at will the executive committee did not need to ask for his resignation. But they did ask for it and when it was not forthcoming they terminated plaintiff's employment as of December 31, 1955. From this a jury could infer that a contract for a period of one year had been made with plaintiff and that defendant corporation wanted a way out. Plaintiff's resignation was not required or necessary, if a hiring at will was involved. Hanlon v. Macfadden Publications, Inc., 1951, 302 N.Y. 502, 505, 99 N.E.2d 546, 24 A.L.R.2d 733.

Trial courts and intermediate appellate courts in the Federal judicial system have been reminded from time to time that the verdict of a jury may not lightly be set aside. And that is the basis of my dissent herein.

If it were possible to reverse and remand this case for a new trial I would be inclined to follow that course. But in view of Rule 50(b), Fed.Rules Civ.Proc. 28 U.S.C.A. as interpreted in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849, and Johnson v. New York, N. H. & H. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77, and the fact that neither party below made a motion for a new trial, this court on appeal is limited to the function of either affirming the judgment for defendant entered "non obstante veredicto," or reversing it and thereby reinstating the verdict of the jury in favor of plaintiff.

It is not within this court's power to order a new trial under the procedure

followed at the end of the trial of this case, even if the charge to the jury were held to be inadequate or to contain some substantial error, or if error had been committed during the trial in the admission or exclusion of evidence. So, applying the rule that every inference, favorable to the plaintiff, that can be legitimately drawn from the evidence, must be so drawn, I have concluded that the judgment setting aside the jury's verdict should be reversed, the verdict of the jury awarding plaintiff damages in the amount of $10,416.65 should be reinstated, and plaintiff should have judgment against the defendant for the amount of the jury's verdict, with interest, plus costs in the court below and in this court.