WEN KROY REALTY Co., INC., Respondent, *v.* THE PUBLIC NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Appellant.

(Argued June 14, 1932; decided October 18, 1932.)

*Sam L. Cohen* and *Felix A. Fishman* for appellant. The president of the plaintiff corporation had power to indorse the check in blank and thus pass title thereto to defendant regardless of whether the proceeds of the check were subsequently diverted from the corporate purposes of plaintiff. (Neg. Inst. Law, § 41; *Salen* v.

*Bank of State of New York*, 110 App. Div. 636; *Cluett* v. *Coture*, 140 App. Div. 830; *McCabe Hanger Mfg. Co.* v. *Chelsea Exchange Bank*, 183 App. Div. 441; *Standard Steam Specialty Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Martin* v. *N. F. P. Mfg. Co.*, 122 N. Y. 165; *First Nat. Bank* v. *Navassa Phosphate Co.*, 119 N. Y. 256; *McComb* v. *Barcelona Assn.*, 134 N. Y. 598; *Marine Bank* v. *Butler Colliery Co.*, 52 Hun, 612; 125 N. Y. 695; *Grant* v. *Treadwell*, 1 App. Div. 367; *Bigelow Co.* v. *Automatic Gas Co.*, 56 Misc. Rep. 389; *Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Chambers* v. *Lancaster*, 160 N. Y. 342; *Patterson* v. *Robinson*, 116 N. Y. 193; *Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473; *Patteson* v. *Ongley Electric Co.*, 87 Hun, 462; 155 N. Y. 674; *Conover* v. *Insurance Co.*, 1 N. Y. 290; *Booth* v. *F. & M. N. Bank*, 50 N. Y. 396; *Holmes* v. *Willard*, 125 N. Y. 75; *Rathbun* v. *Snow*, 123 N. Y. 343.) The form of the check in suit and the indorsements thereon and deposit thereof in the account of another corporation did not give defendant any notice of a contemplated diversion of the proceeds thereof and defendant in no way facilitated or participated in a diversion of the proceeds of the check. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394; *Empire Trust Co.* v. *Cahan*, 274 U. S. 473; *Lasker* v. *Mutual Bank of Roseville*, 194 N. Y. Supp. 379; 201 App. Div. 243; 234 N. Y. 550; *Salen* v. *Bank of State of New York*, 110 App. Div. 636; *Cluett* v. *Coture*, 140 App. Div. 830; *Interboro Brewing Co.* v. *Doyle*, 165 App. Div. 646; *Oliner* v. *Goldberg*, 168 App. Div. 874; *Cole* v. *Harrison*, 167 App. Div. 336; *Cheever* v. *Pittsburgh R. R. Co.*, 150 N. Y. 59; *American Exchange Nat. Bank* v. *N. Y. Belting Co.*, 148 N. Y. 698; *Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Niagara Woolen Co.* v. *Pacific Bank*, 141 App. Div. 265; Neg. Inst. Law, § 95; *Miller* v. *Consolidation Bank*, 48 Penn. St. 514; *Walker* v. *Trenholm & McKee*, 14 S. C. 142.)

*Abraham Lillienthal* for respondent. It was correctly found that the president of the plaintiff corporation had no authority to indorse the check without restriction or limitation. (*Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332; *Patterson* v. *Robinson*, 116 N. Y. 193; *Oakes* v. *C. W. Co.*, 143 N. Y. 430; *Wagner* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Moch* v. *Security Bank*, 176 App. Div. 842; 225 N. Y. 723; *Weissman* v. *Banque de Bruxelles*, 254 N. Y. 488.) The form of the indorsement, its offer for deposit in the account of the corporation controlled by the person indorsing the check, was notice to defendant of a conversion and it should have inquired and is bound by what it would have ascertained. (*Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Dennis Metal Mfg. Co.* v. *Fidelity Union Trust Co.*, 123 Atl. Rep. 614; *McIntosh* v. *Detroit Sav. Bank*, 247 Mich. 10; *West St. L. Sav. Bank* v. *Shawnee Bank*, 95 U. S. 557; *Bank of Benson* v. *Gordon*, 103 Neb. 508; *Underwood* v. *Bank of Liverpool*, [1924] 1 K. B. 775; *Ansorge* v. *Kane*, 244 N. Y. 395.) There was no ratification or estoppel and the conduct of the directors of the plaintiff in permitting the president to manage the corporation is not available as a defense to the action. (*Glens Falls Indemnity Co.* v. *Chase Nat. Bank*, 257 N. Y. 441; *Shipman* v. *Bank*, 126 N. Y. 318; *Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26; *Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 154; *Wagner* v. *Battery Park Nat. Bank*, 228 N. Y. 37; *Shepard & Morse* v. *Eldridge*, 171 Mass. 516; *Wizard Oil Co.* v. *U. S. Express Co.*, 265 Ill. 156.)

LEHMAN, J. Moses Silverman, the president of the plaintiff corporation, was authorized by it to manage its business. He was also the president of Silfo Amusement Company, authorized by that corporation to manage its

business and to draw checks upon its deposit account in the defendant bank. The plaintiff corporation was the owner of a check, payable to its order. Silverman deposited the check in the deposit account of Silfo Amusement Company. The defendant bank collected the check and permitted Silverman, as president of Silfo Amusement Company, to withdraw its proceeds. In that manner Silverman appropriated the check and its proceeds to his own use or the use of Silfo Amusement Company, and deprived the plaintiff corporation of its property. Concededly the defendant bank is liable for the conversion of the check and its proceeds unless the plaintiff corporation by an indorsement upon which the bank might rely transferred to Silfo Amusement Company title to the check.

Before depositing the check, Silverman, for the purpose of indorsing the check, placed upon its back the name of the plaintiff corporation and signed his own name as president thereunder. Then he induced his son, David Silverman, to sign his name as secretary, though in fact the son was not the secretary and had no authority from the plaintiff corporation, actual or apparent, to act as its agent. The problem presented is whether the genuine signature of the president of the corporation, under these circumstances, binds the corporation.

The plaintiff corporation did not by any by-law or resolution of its board expressly restrict the broad power, conferred upon its president, to manage its affairs. If, by fair implication, that power included authority to indorse and transfer negotiable instruments payable to it, then the co-operation of no other officer or agent would be necessary where the president assumed to exercise that power. The additional signature of an unauthorized person would not bind the corporation nor would it detract from the binding effect of the signature by an authorized agent. The difficulty in this case is that the president in signing the name of the corpora-

tion, was not acting in behalf of his principal, but was stealing its property. Here there was not merely disregard of instructions but an abandonment by the agent of his agency. The power of the agent results from the manifestation of the principal's consent, and extends no further than such manifestation. We assume, without further consideration, that the corporation, by empowering its president to manage its affairs, has manifested its consent that he shall, as its agent, transact its ordinary business, including the transfer of negotiable instruments. It has not manifested any consent that he shall appropriate its property. "A power to act for another, however general its terms, or wide its scope, presupposes integrity and faithfulness in its exercise and cannot be enlarged by implication or construction to the justification of a diversion to the use of the agent of moneys or property subject to the agency." (*Porges* v. *United States Mortgage & Trust Co.*, 203 N. Y. 181, 190.) We do not say that in this case the facts would support an inference of an implied power to indorse and transfer negotiable instruments in the course of the transaction of corporate business. There is, indeed, a contrary finding, and the by-laws seem to show that only the treasurer had the right of custody of corporate funds and that without specific authority otherwise conferred, the president had no power to hold or transfer any negotiable instruments. We do say that even assuming that such power exists, it is limited to transfers made on behalf of the corporation in the course of its business.

The scope of an agent's actual authority is determined by the intention of the principal or, at least, by the manifestation of that intention to the agent. However wide the authority vested in the president of the corporation may have been, it certainly did not extend beyond the corporate business. " The general rule is that an agent employed to do an act is deemed authorized to do it in the manner in which the business entrusted to him is

usually done." (*Argersinger* v. *Macnaughton*, 114 N. Y. 535, 537.) Thus the fact that a corporate principal grants to its president unrestricted authority to manage its business may, in some circumstances, properly justify an inference that, in managing the business, the agent is authorized to transfer and indorse negotiable instruments payable to the order of the corporation. Certainly no inference can be drawn that the corporate principal in authorizing its president to manage its affairs intended to give the president authority to transfer and indorse its negotiable instruments when not managing the business of the corporation and when despoiling it of its property.

In a multitude of cases in all jurisdictions, a principal despoiled, in that way, by a general agent, to whom its property has been intrusted with power to transfer it in behalf of the principal, has been allowed to reclaim its property or to recover damages for its conversion, either from the agent or from any person claiming title through the agent with knowledge or notice that by the transfer the agent deprived his principal of its property. Such recovery has not been permitted upon any theory that a party having notice of the agent's breach of trust takes subject to all equities in favor of the principal. In a long line of cases the courts of this State have consistently held that a general agent of a corporation intrusted by the corporation with the management of the corporate affairs, has no actual authority, though he may in some circumstances have apparent power, to appropriate the corporate property to his own use by transfer to himself directly or indirectly, and that is true as well of negotiable instruments as other property. Because the attempted transfer is made without actual authority, it constitutes a conversion, and passes no title to any one who is not entitled to rely on the apparent authority. So we said and decided in *Wagner Trading Co.* v. *Battery Park Nat. Bank* (228 N. Y. 37, opinion by ELKUS, J.). That decision was founded on no novel doctrine, and in *Whiting*

v. *Hudson Trust Co.* (234 N. Y. 394, 405, opinion by CARDOZO, J.) this court so pointed out. " We held that such an indorsement was not within the power of the agent (Cf. *Bank of N. Y. N. B. Assn.* v. *Am. D. & T. Co.*, 143 N. Y. 559, 563; *Manh. L. Insurance* v. *F. S. S. & G. S. F. R. R. Co.*, 139 N. Y. 146, 151; *Ward* v. *City Trust Co. of N. Y.*, 192 N. Y. 61, 71; *Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181, 190), and that the consequences were those that follow where an indorsement has been forged. (*Standard S. S. Co.* v. *Corn Ex. Bank*, 220 N. Y. 478, 481.) " The rule everywhere applied, that such transfer constitutes a conversion of the corporate property, is the conclusion drawn from the premise that the transfer is made without actual authority. " It is an acknowledged principle of the law of agency that a general power or authority given to the agent to do an act in behalf of the principal, does not extend to a case where it appears that the agent himself is the person interested on the other side." (*Bank of New York Nat. Banking Assn.* v. *A. D. & T. Co.*, 143 N. Y. 559, 564.)

It is true that " the principal is often bound by the act of his agent in excess or abuse of his actual authority, but this is only true between the principal and third persons, who believing and having a right to believe that the agent was acting within and not exceeding his authority, would sustain loss if the act was not considered that of the principal." (*Welsh* v. *Hartford Ins. Co.*, 73 N. Y. 5, 10.) Though actual authority is the result of the principal's consent manifested to the agent, apparent authority is the result of consent manifested to the third party. In *Whiting* v. *Hudson Trust Co.* (*supra*) we indicated caution against a restriction of the rule of apparent authority beyond the point where a third party fails to make reasonable inquiry. We indicated no doubt that an action for conversion lies where there was no apparent authority. Whether apparent authority is

based upon the principle of estoppel or not, it " implies a transaction itself invalid, and a person who is forbidden for equitable reasons to set up that invalidity." (*Swan* v. *North British Australasian Co.*, 7 Hurls. & Norm. 603, 634, cited in *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, at 53.) It has been defined as the " authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny." (2 Corpus Juris, 570. Cf. *Small* v. *Housman*, 208 N. Y. 115, 123.)

Whether an indorsement of a check payable to a corporation is an act performed in the course of the corporate business or the conversion of the property of the corporation, is an extrinsic fact particularly within the knowledge of the person authorized to transact that business. In such circumstances an innocent third party may ordinarily rely upon the representations of the agent. (*Farmers & Mechanics Bank* v. *Butchers & Drovers Bank*, 16 N. Y. 125.) Even if we were to assume that the president of the corporation had actual or apparent authority to indorse checks in the course of the corporate business that rule would have no application here, for the president of the corporation authorized to transact its business did not represent that he, acting alone, had authority to indorse this check, nor did he assume to act as sole agent. The check purported to be indorsed by the corporation acting through its president and one who falsely represented that he was its secretary. If the corporation, though authorizing its president to transact its business, had restricted his authority by requiring the addition of the signature of another officer for the indorsement of any check, then a person receiving a check which purported to be indorsed by two officers would have notice of the limitation of the president's authority, even if such notice were otherwise necessary, and the corporation would not be bound by the signature of its president alone. So, here, the defendant bank

receiving a check purporting to be indorsed by two officers could not rely upon an apparent power of the president which the president did not represent that he was exercising. The basis for a finding of apparent authority is completely lacking; for there was no assumption of apparent power by the president to bind the corporation by his sole signature; no representation of any authority to so act and no reliance by the bank upon the existence of such power. The check in question having, therefore, been indorsed or transferred without authority, even colorable, the question of the defendant's good faith or want of notice does not enter into the case, any more than it would if the check had been indorsed only by the secretary. Lacking authority at inception, the defendant acquired no title to the money and must pay it back to the plaintiff, the rightful owner. (*Standard Steam Specialty Co.* v. *Corn Exchange Bank*, 220 N. Y. 478.)

The judgment of the Appellate Division should be affirmed, with costs.

KELLOGG, J. (dissenting). Moses Silverman was the president of the plaintiff corporation and the active manager of its affairs. He negotiated a loan for the corporation from David Abrams, who delivered to him a check for $15,000, representing a part of the moneys advanced, which was made payable to the corporation. Silverman wrote the corporate name on the back of the check and signed his own name as president thereunder. He also procured his son, David Silverman, to sign his name as secretary beneath his own, although David held no such office. Silverman then indorsed the check " Silfo Amusement Co.," that being the name of a corporation of which he was likewise the president and active manager, and delivered the check to the defendant bank for deposit to the account of Silfo Amusement Company, which was a depositor therein. The defendant collected the check and placed the amount to the

credit of such depositor, which disbursed the moneys for its own purposes by checks subsequently drawn. The plaintiff sues the bank to recover the sum represented by the check which the defendant collected. It has been held that Silverman, as president, had no power to indorse the check for other than corporate purposes; that no title to the check passed through the indorsement; that the defendant, therefore, converted the check and must make restoration to the plaintiff.

The by-laws of the plaintiff conferred upon Silverman, as president, the power to " perform all duties incident to the office of president which are authorized and required by law." They did not express in words the gift of a power to indorse negotiable instruments made payable to the corporation. On the other hand, they imposed no restrictions upon that power, if such existed. Indeed, upon the trial, counsel for the plaintiff remarked, " Oh, yes, it is conceded there are no restrictions." If Silverman was possessed of the power to make the indorsement, that power existed by implication, as an attribute of the office of president which he held.

" The president or other general officer of a corporation has power, *prima facie*, to do any act which the directors could authorize or ratify." (*Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473, 479.) The secretary of an insurance corporation, by virtue of his office and his permitted practice, has power to execute a written consent permitting a policyholder to mortgage the insured property, and to transfer the policy of insurance thereupon to the mortgagee. This is so, although the policy requires a written consent of the company to that end, and the by-laws of the corporation provide that insured property may not be mortgaged except by the consent of the board of directors. The company is not at liberty " to dispute or deny the authority of their secretary to indorse the consent in question." (*Conover* v. *Mutual Ins. Co.*, 1 N. Y. 290, 293.) The president of a

creditor bank, by virtue of his office, may satisfy a judgment in favor of his bank, although the judgment has been previously transferred, and this whether the satisfaction was with or without consideration paid to the bank. (*Booth* v. *Farmers' & Mechanics' Nat. Bank*, 50 N. Y. 396.) The president of a corporation, such as a bank, " Has an implied power to indorse and transfer its negotiable paper." (Daniel on Negotiable Instruments, § 394.)

Since by implication from the nature of the office which he holds, a corporate president has power to indorse checks payable to the corporation, the case must be the same as if the power of making a general indorsement were conferred upon him by express words. The well-known doctrine of the law of agency would, therefore, apply, that the act of a corporate officer, performed within the scope of his general authority, although a violation of his duty to his corporation, nevertheless, in respect to strangers dealing with the officer innocently for a consideration paid, is a valid corporate act. (*Booth* v. *Farmers' & Mechanics' Nat. Bank, supra.*) An agent in charge of a branch store, having been granted power to make a general indorsement of checks due the principal, although instructed to deposit all proceeds of the same in a particular bank, who indorses and transfers a check to an innocent purchaser and uses the proceeds of the check for his own purposes, nevertheless transfers good title to the check. "Any departure by the agent from such authority and instructions was a mere diverting of a negotiable instrument from an authorized use, in which case it is not disputed the loss, if any, must fall on the principals of the agent guilty of the diversion rather than on a *bona fide* holder for value without notice." (*Cluett* v. *Couture*, 140 App. Div. 830, 833; 206 N. Y. 668.) Where a clerk in the office of a corporation is expressly authorized to use a stamp expressing a transfer for deposit only and to indorse the corporate name there-

under, a general indorsement of a check, for the purpose of securing the proceeds for herself, will not carry title; on the other hand, if her authority is to indorse generally, title will pass. (*Standard Steam Specialty Co.* v. *Corn Exchange Bank*, 220 N. Y. 478, 481.) In that case Judge POUND said: " One authorized to make a restrictive indorsement is not authorized to make a general indorsement." Again, he said: " Cohen [the clerk] had no authority to indorse checks in blank. If plaintiff had given such authority to her with the intention that the checks when so indorsed might be used for a specific purpose only, such as deposit in the Greenwich Bank, the indorsement would not be made ' without the authority of the person whose signature it purports to be.' (Neg. Inst. Law, § 42.)"

The American Law Institute defines "Authority," possessed by an agent, to be " the ability of the agent, resulting from the manifestation by the principal to him of the principal's consent that he shall act for the principal, to create rights in favor of, and impose liability upon, the principal, in accordance with such manifestation." (Re-statement of the Law of Agency, § 9.) It defines " apparent authority " as the " ability " of a person, " resulting from the manifestation by the purported principal to a third person of consent " that such first person shall " act as his agent " to create rights in favor of and impose liability upon such purported principal with respect to such third person in accordance with the manifestation, " where such manifestation, at the time in question, differs from that then made to the purported agent." (§ 10.) It states: "A manifestation of consent to third persons coinciding with the manifestation to the agent does not result in apparent authority. It is only where the manifestation to third persons differs from the manifestation to the agent, that there can be apparent authority." (Id.) Obviously, where the sole manifestation by a corporation of its consent that the

president should act for it, in the indorsement of its checks, consists in its appointment of the president to that office, or in express words to that very effect, the manifestation, " at the time in question," is the same whether to the president or to a third person. This being so, it would logically follow that the president would have " ability " or power, which was actual rather than apparent, to indorse and pass title to a check, for the purposes of self-enrichment, whether to an innocent or guilty third person. Of course, neither the president nor the third person could assume from the manifestation that the corporation would actually approve of a diversion of its funds. Yet the corporation having manifested the bestowal of a general power of indorsement, that power would actually exist to effectuate the passage of legal title to the third person, whether aware or innocent of the wrong. Of course, to the purchaser having notice it would pass subject to equities, while to the innocent purchaser it would be free therefrom. This would not derogate from the fact that an actual and legal transfer had been made in either case, and that neither a forgery nor a conversion had been committed. This view, however, does not appear to find sanction in our recent decisions.

In *Wagner Trading Co.* v. *Battery Park Nat. Bank* (228 N. Y. 37, 43) this court said through ELKUS, J.: " Assuming as we do that Wagner [the president] had general authority to indorse checks for the plaintiff's corporate purposes, clearly this does not authorize him to indorse checks to his own order and appropriate the money to his own personal use, and the nature of this transaction was such as to warn defendant that the checks were being diverted from usual business channels." This may not be taken to mean that a corporate president, deriving power to indorse by implication from the nature of his office, may not transfer title to an instrument, by an indorsement for purposes other than corporate. So

to hold would violate well-established principles of law, and particularly the principle that an agent's acts, performed within the general scope of his authority, although offending against his duty, may nevertheless constitute valid corporate action. That the court intended to express no such thought is shown by the concluding clause of the citation, which limits its application to cases where " the nature of [the] transaction was such as to warn defendant that the checks were being diverted from usual business channels." The principle announced is this: The indorsement of a negotiable instrument by the president of a corporation passes title to an innocent purchaser for value; it passes no title to a person having notice that the president thereby intends to accomplish a diversion of the corporate funds to his own use. Thus, there may be an apparent power to indorse, as well as an actual power, confided to a corporate president, through the same manifestation of corporate consent, having the identical meaning whether to the president or to a third person. This appears to be in conflict with the views of the Institute. Nevertheless, in this case, it does not militate against the validity of the transfer, if we consider that the transferee, the defendant, was an innocent third person.

It has been held that the face of a check, made payable to a corporation, showing an indorsement by the president to himself individually, sufficiently warns an indorsee of an impending diversion to rob him of the character of an innocent purchaser. (*Ward* v. *City Trust Co.*, 192 N. Y. 61; *Wagner Trading Co.* v. *Battery Park Nat. Bank*, *supra*.) We do not think that this principle has application to this case. Silverman, in placing the corporate indorsement upon the check, made the check payable, not to himself, as did the president in the *Wagner* case, but to " Silfo Amusement Co.," a corporation of which he was also president. In *Cheever* v. *Pittsburg, S. & L. E. R. R. Co.* (150 N. Y. 59) M. S. Frost, the

president of a corporation, was authorized by resolution to execute a corporate note for $10,000, and obtain money thereon for the purpose of buying railroad cars for the corporation. He executed two notes for $5,000, and made them payable to his own clerk. The clerk indorsed the notes, making them payable to M. S. Frost & Son, a partnership of which M. S. Frost was senior member. Frost then negotiated a loan for M. S. Frost & Son, and indorsed the corporate note with the firm name, making it payable to the lender, in order to secure the loan. It was held that the form of the note was not sufficient to warn the lender that the note was being used to divert corporate funds to the uses of the president, and that the note was a binding obligation. We think that, in our case, the form of the check gave no notice to the defendant bank, which purchased the check indorsed by Silverman, that he intended personally to appropriate its proceeds, and that the defendant took title in good faith and for value.

Judge LEHMAN, in his opinion herein, seems to agree that Silverman was vested with apparent power, as president, to indorse and transfer good title to the defendant, but that he did not in fact exercise that power. His point seems to be that, as Silverman caused his son to indorse his name upon the check as secretary, therefore, he did not represent that he alone had power to indorse nor did the defendant place reliance upon such a representation. This is sufficiently answered by the following quotation from the Re-statement: " If the facts justify the inference that the act was authorized, it is authorized. The person acting and now relying upon the inference, need not have known the facts at the time of acting. The result does not depend upon estoppel." (§ 44.) It is a question of power, and power only. Silverman having the power to indorse for the corporation, indorsed its name to the check and signed his name thereunder. That was a sufficient

execution of the power to pass title when delivery was made. It matters not what Silverman thought; it matters not what the defendant thought. The power existed and the power was executed. That another signed his name, who had no authority in the premises, did not derogate from the validity of a transfer made by one vested with full power to make it.

The judgment should be reversed and the complaint dismissed, with costs.

POUND, Ch. J., CRANE, O'BRIEN and CROUCH, JJ., concur with LEHMAN, J.; KELLOGG, J., dissents in opinion in which HUBBS, J., concurs.

Judgment affirmed.