H. MASUDA, Plaintiff-Appellee,

v.

KAWASAKI DOCKYARD COMPANY,
Ltd., Defendant-Appellant.

No. 201, Docket 28273.

United States Court of Appeals
Second Circuit.

Argued Dec. 9, 1963.

Decided March 2, 1964.

Leon Silverman, New York City (John
Sheneman, Lewis A. Stern, Francis J.
O'Brien and Strasser, Spiegelberg, Fried

& Frank, and Zock, Petrie, Sheneman & Reid, New York City, on the brief), for appellee.

Edwin Longcope, New York City (Hill, Betts, Yamaoka, Freehill & Longcope, New York City, on the brief), for appellant.

Before CLARK,* SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The defendant, a Japanese shipbuilding company, appeals from a judgment of $557,220.67 entered against it in the United States District Court for the Southern District of New York, Lloyd F. MacMahon, J., pursuant to a special jury verdict and certain stipulations by counsel. Defendant attacks the sufficiency of the evidence, the adequacy of the charge, and the refusal to relieve it from a stipulation as to interest. We find no error and affirm the judgment.

The plaintiff sued for commissions earned under an alleged oral contract in which the defendant agreed to employ the plaintiff to procure shipbuilding contracts for a salary plus commissions. The Kawasaki Dockyard Co. had been attempting to sell ships in the American market for some time, but staffed its New York sales office with personnel who were neither conversant with American business methods, nor able to converse easily in English. As might be expected, orders to build ships had been secured only with the help of brokers, who were generally paid 2–3% of the ship's price as a commission. One of the firms employed as a broker by Kawasaki was the Nissho American Corporation, an import-export firm that also handled ship sales for several Japanese yards. Plaintiff Masuda, an enterprising and bilingual Nisei (a person of Japanese ancestry born in the United States), was temporarily employed in 1955–56 as a clerk-salesman-interpreter with Nissho while attending graduate school in the evenings.

In the course of his employment with Nissho in the early part of 1956, Masuda was instrumental in seeing that Kawasaki's New York representative secured contracts to build ships for Gulf Oil Co. Appreciating Masuda's efforts, Koizuma, the defendant's New York representative, on May 6, 1956 allegedly made Masuda an oral offer of employment with Kawasaki at a salary plus commission, an offer which Masuda promptly accepted. According to Masuda's testimony, he was to receive a .5% commission on every ship he developed into a contract, including the pending contracts with the Gulf Oil Co., provided that Koizumi could reduce Nissho's promised commission on the Gulf ships. But if Nissho's commission could not be reduced, Kawasaki was to pay Masuda a commission of an amount equal to his house mortgage (in the neighborhood of $10,000 to $13,000) on each of the Gulf ships.

The jury found that Koizumi had indeed promised Masuda a salary and a commission of .5% on every shipbuilding contract that Masuda procured for the defendant, and that Koizumi had authority to make such a promise. The jury further found that Masuda had been the procuring cause of contracts for the defendant to build ten ships at prices totaling $84,364,517.79. Finally, the jury found that a written employment contract executed by Masuda and Kawasaki in Japan on March 14, 1958 was not intended to embody all the terms of the employment agreement.

The defendant's primary contention on this appeal is that the evidence was insufficient to support the jury's finding that there was such an oral contract. We should have no difficulty in accepting the jury's resolution of the sharp issue of credibility posed in this case were it not for Masuda's own letters to Kawasaki officials. The language of this correspondence plainly suggests that any employment contract between Kawasaki and Masuda was still in the preliminary bargaining stage long after May 5, 1956, the

---

* Judge CLARK heard argument in this case, but died before this opinion was prepared.

date when the alleged oral agreement was concluded. Though his letters freely discussed the terms and conditions of his employment, Masuda made no mention of his commission for about a year. When he finally got around to mentioning it in a letter in August of 1957, Masuda wrote that it might be appropriate, if the company wished, to pay him a small commission as an incentive. And when he asked for his commission outright in letters in November of 1957 and in January of 1958, Masuda suggested that the only commission offered him was an amount equal to his house mortgage on each ship for which there was no broker involved. No reference to a commission of .5% on each ship sold appears in all the correspondence. Nor was there any reference to a commission in the written employment contract executed by Masuda and Kawasaki in March of 1958.

Masuda explained that these omissions were the result of his attempts to conform to Japanese custom and business practice by being excessively polite and indirect. He testified that he had been told he would be unable to receive his commission until he became a *honsha-in*, a permanent employee, and this did not occur until September 1, 1958. He also testified that when he refused to sign the employment agreement because it did not provide for his commission, he was told the contract was only a formality required as a preliminary to Masuda becoming a *honsha-in*. Because large Japanese firms are skeptical about hiring Nisei as permanent employees, Masuda explained that as the first Nisei hired by Kawasaki, he leaned over backwards to avoid damaging his status by insisting on his commission openly from the start.

■■ Though we might have found otherwise if we were sitting as triers of fact, we cannot set aside a jury verdict based on inferences reasonably drawn from the evidence presented at trial. Hill v. Sharples Corp., 247 F.2d 405, 409 (2 Cir. 1957). The question is close, but we think the evidence sufficient for the jury to find that an oral employment contract had been made on May 5, 1956.

Certainly there is a considerable gap between Japanese and American business practices and customs. See generally, Abegglen, The Japanese Factory (1958). And though rewarding an employee by paying commissions may be alien to the practice of a Japanese firm, the terms of the offer allegedly made to Masuda are strikingly similar to those under which Kawasaki employed Pohl, a former New York representative. And if Masuda's correspondence is puzzling, equally baffling are the correspondence and evasive explanations of the Kawasaki officials. For example, Churiki, General Manager of Kawasaki's Marine Business Department, replied to Masuda's letter asking for a small commission, by saying: "[Y]ou mentioned again about the point [the commission] however there would be nothing which cannot be solved between you and I relying upon mutual confidence between us." Koizumi's letter to Churiki on December 4, 1957 speaks of putting Masuda in charge of the New York office so that "he would be able to adjust the finance a little to his advantage" and again "if Hank would manage to control the finance of the New York office reasonably, he may be able to spare some cash for himself." And the testimony and letter of Kai, Koizumi's predecessor as New York representative, suggests that all the conditions of Masuda's employment were not embodied in the formal contract. Looking at the record as a whole, we cannot say that a jury could not reasonably believe that Masuda had received and accepted the oral offer of employment which he described.

■ The defendant next contends that even if Koizumi made such an offer to Masuda, Koizumi had no authority to do so. But viewed in the light most favorable to the plaintiff, we think the evidence sufficient for the jury to conclude that Koizumi had implied or apparent authority to hire Masuda for a salary and a commission of .5%. Implied authority may be viewed as "actual authority given implicitly by a principal to his agent" or as a "kind of authority arising solely from the designation by

the principal of a kind of agent who ordinarily possesses certain powers." Lind v. Schenley Industries, Inc., 278 F. 2d 79, 85 (3 Cir. 1960) (applying New York law). The general rule followed in New York is that "an agent employed to do an act is deemed authorized to do it in the manner in which the business intrusted to him is usually done." Wen Kroy Realty Co. v. Public Nat. Bank & Trust Co., 260 N.Y. 84, 183 N.E. 73 (1932); Argersinger v. MacNaughton, 114 N.Y. 535, 21 N.E. 1022 (1889).

■ Apparent authority is based on the principle of estoppel. It arises when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess. If a third person holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized. See Lind v. Schenley Industries, Inc., supra; Wen Kroy Realty Co. v. Public Nat. Bank & Trust Co., supra.

Here Koizumi was sent to the United States as defendant's New York sales representative with the express purpose of developing orders to build ships from American firms. The defendant had received orders for ships from American firms only by using brokers, to whom it regularly paid commissions ranging as high as 3%. Previously, Kawasaki had been represented in New York by a Mr. Pohl of Hansa Navigation Corp. for a commission varying between .5% and 1%. Koizumi had not been to the United States before, knew little of American business practices, and spoke English poorly. He was obviously intended to be more than errand boy, for he cut Nisho's authorized commission from 2% to 1% on his own and signed the provisional contracts for Kawasaki, a distant company employing more than 10,000. Under these circumstances a jury might reasonably infer that it was necessary and normal for Koizumi to hire Masuda to enable him to perform his assigned task of securing ship orders in the American market, or that Masuda acted on a reasonable belief that Koizumi had authority to hire him. Compare Lind v. Schenley Industries, Inc., supra, with Gumpert v. Bon Ami Co., 251 F.2d 735 (2 Cir. 1958). In makes no difference that Masuda was paid a small salary and a smaller commission than most of the brokers, or that he was designated as an employee rather than as a broker. He performed the same function as a broker, and indeed the only ships which Kawasaki has sold on the American market without a broker have been through Masuda's efforts.

■■ There is no merit to the defendant's claim that the charge was highly prejudicial because the trial judge characterized the evidence one-sidedly and disparaged the credibility of the defendant's witnesses because of their nationality. There was no summary of the evidence in the charge. Furthermore, the court repeatedly advised the jury to disregard any description of evidence in the charge that differed from their own recollection. By reading part of Masuda's testimony setting out the terms of the alleged oral contract, the trial court simply set out the focal point of the controversy. In no way did the court suggest that the jury should accept the particular testimony read to it. The charge as a whole was free from prejudice. Those three short sentences used to demonstrate the gap between Japanese and American cultures—"These people don't talk like we do. They don't give direct answers. They don't call a spade a spade"—were plainly directed just as much to Masuda as to the defendant's witnesses. Any harm that may have resulted from these isolated remarks would be slight and inconsequential. Nor is there merit to the attack on the conduct of the trial. While the court may not have been justified in cutting off objections to "evidence points," defendant's points were insubstantial and their curtailment was not prejudicial.

■ Finally, the defendant's contention that it should be relieved of a maladroit stipulation because of a mental

lapse by counsel is refreshingly candid but is accompanied by no adequate reason for granting the relief requested. Counsel stipulated that if the jury found for the plaintiff, the commissions due on each hull would be computed on the delivered price of each hull. In addition, counsel stipulated that interest should run from the date each ship's contract was signed instead of from the time each ship was delivered, which followed the contract dates by 26 months to five years. Having made the stipulation, on which the case proceeded, defendant may well be held to it. See Vanguard Insurance Co. v. Connett, 270 F.2d 868, 871 (10 Cir. 1959); Greenspahn v. Joseph E. Seagram & Sons, 186 F.2d 616 (2 Cir. 1951).

The judgment is affirmed.