ORIENT MID-EAST LINES, Plaintiff-Appellee,

v.

ALBERT E. BOWEN, INC., Defendant-Appellant.

No. 554, Docket 71-1876.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1972.

Decided April 17, 1972.

Richard W. Baldwin, New York City (Cardillo & Corbett, New York City, on brief), for plaintiff-appellee.

John H. Cleveland, III, New York City (Haight, Gardner, Poor & Havens, New York City, on brief), for defendant-appellant.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*

JAMESON, District Judge:

This is an appeal from a decision of the district court holding defendant-appellant, Albert E. Bowen, Inc. (Bowen), a freight forwarding agent, liable to plaintiff-appellee, Orient Mid-East Lines, an ocean carrier, for breach of an oral contract of affreightment.

Orient commenced the action against Bowen for breach of contract and Gener-

---

* Senior District Judge of the District of Montana, sitting by designation.

al Motors Corporation for tortious interference with the contract, alleging damages suffered when a shipment of ten dump trucks from New York to Calcutta was withdrawn by the shipper, General Motors Company. Blackwood Hodge (India) Pvt., Ltd., the consignee and Bowen's principal, was added as a party defendant. Blackwood's motion to dismiss was denied, 297 F.Supp. 1149, it failed to answer, and a default judgment was entered. In the memorandum opinion holding Bowen liable the court dismissed the complaint against General Motors.

## Factual Background

During the summer of 1963 Blackwood began negotiations with General Motors for the purchase of earth moving equipment and trucks. In November, 1963 General Motors received a purchase order from Blackwood for the trucks involved in this litigation. Blackwood was to arrange for the shipment of the trucks and selected Bowen as freight forwarder.

Eagle Ocean Transport, Inc. (Eagle) was Orient's agent in New York. The negotiations concerning the contract in question were conducted by James Muladelis (known in the trade as Mulara), an employee of Eagle, on behalf of Orient, and Joseph A. Lobe on behalf of Bowen.

The negotiations culminated in an oral agreement that Orient would provide a ship to carry the ten dump trucks to Calcutta at a lump sum freight rate of $4,234.00 apiece. Mulara testified that the date of the telephone conversation in which they arrived at this agreement was February 10, 1964. Lobe testified, and the court found, that the date of the oral agreement was January 30, 1964. The court found further that on February 10 Lobe told Mulara the shipment was ready, and Mulara "gave Lobe the name of the vessel, 'Orient Mariner', with a date of March 23, 1964."

On or about February 10, 1964 Mulara made a handwritten memorandum (Ex. 3) and had his secretary type a written contract (Ex. 1) which was dated February 10, 1964. He sent the original and a copy to Lobe. Sometime between February 10 and February 14 Mulara was informed that Lobe had not received the contract. He then sent Lobe an identical contract (Ex. 2), except that the second contract was dated February 14, 1964. Lobe testified that he received and read the first contract. Both contracts named Bowen as the contracting party[1] and contained a reference to "on deck" shipment. There is a conflict in the testimony of Mulara and Lobe with respect to the inclusion of the "on deck" provision, which will be discussed later herein. On or about February 18, 1964 Bowen learned that General Motors would not release the trucks for shipment on Orient's vessel.

The court found that the next time Lobe and Mulara discussed the contract (after February 10) was on February 28, 1964 and with respect to this conversation said:

"Lobe said he was trying to get the cargo to the pier, but that General Motors would not release it. This was the first time that Muladelis knew that General Motors was the shipper. In the same conversation Muladelis ascertained for the first time the name of the consignee, who was Bowen's principal. Efforts were then made to have the consignee put pressure on General Motors to send the trucks on plaintiff's vessel."

These efforts were unsuccessful and Orient's ship sailed without the cargo. The trucks were later shipped via another carrier.

Two issues are presented on this appeal: (1) whether there was a binding

---

1. The memorandum and contracts were all on a "Freight Contract" form, with the heading "Orient Mid-East Great Lakes Service" and with an acceptance and signature for "Eagle Ocean Transport, Inc. as agents."

oral contract, and (2) whether Bowen is liable as agent of an undisclosed principal.

*Was There a Binding Oral Contract?*

 With respect to the first issue the district court said:

"The question then is whether there was an enforceable contract entered into by Mularadelis and Lobe on behalf of their respective employers. The answer is simple since Lobe testified that an oral booking is the ordinary practice in this situation and it is binding.

"Lobe's employer does not question his authority to make these bookings. \* \* \* It questions whether there was an agreement to all the material elements of the contract. I find that there was such agreement."

Appellant contends that no contract was entered into because "there was no agreement on all of the proposed material terms." Specifically, it is argued that Lobe did not at any time agree that the trucks would be shipped "on deck" and that Mulara's memorandum and proposed contracts containing the term "on deck" must be considered as a counteroffer which was not accepted by Bowen.

There is a sharp conflict in the testimony of Mulara and Lobe as to whether the "on deck" provision was discussed in the conversation of January 30 (or February 10 according to Mulara's recollection), which was considered by both Mulara and Lobe as a firm booking. Mulara testified positively that the provision was discussed and that Lobe agreed to shipment of the trucks on deck on Orient's vessel.[2] Lobe testified that there was no mention of the "on deck" term in that conversation or in any prior negotiations and that he did not at any time agree that the trucks would be shipped on deck.

Mulara testified further that the written contract, Exhibit 1, encompassed all of the terms of his prior oral agreement with Lobe. It is undisputed that Lobe did not at any time discuss with Mulara the inclusion of the "on deck" term in the written contract. Lobe testified that he did not take much note of the on deck provision in the contract because he was not sure he was going to get the shipment.[3]

The district court found that the parties reached an oral agreement on all the material terms of the contract and that they intended to be bound by that agreement. According due weight to the trial court's appraisal of the credibility of the witnesses, we are satisfied that these findings are not clearly erroneous. See Smith v. Onyx Oil & Chemical Co., 218 F.2d 104, 108 (3 Cir.1955). With those two facts established, it is clear that a binding contract was created. 1 Corbin, Contracts § 30 at 98–99 (1963).

2. Mulara testified on direct examination:
"A. \* \* \* Then we discussed the on-deck feature because those trucks were supposed to go on deck. We were to ship them on the deck of the vessel.
"Q. What was that discussion?
"A. That the only way we would take them would be to ship them on deck.
"Q. Did Mr. Lobe agree to that?
"A. He did.
"Q. Did he agree to ship the trucks on the vessel of the owner, Orient Mid-East Lines?
"A. Yes, he did." (JA 12a)
Similar testimony was given on cross-examination.

3. On interrogation by the court, Lobe testified in part:
"The Court: Exhibit 1 that you have in front of you, that says 'on deck,' doesn't it?
"The Witness: It does say 'on deck.'
"The Court: You have read it?
"The Witness: Yes.
"The Court: You didn't speak to Mr. Mulara about it when you saw him?
"The Witness: No, because I did not exactly have the shipment yet. I still didn't have the shipment to deliver."
(JA 35a)

*May Appellant be Held Liable as Agent
for an Undisclosed Principal?*

Orient concedes that Mulara "knew Bowen was a freight forwarder and that as such acted as agent for someone." Mulara had heard of Blackwood Hodge and knew the nature of its business. He knew that Bowen's principal was in Calcutta. He was positive throughout his testimony, however, that he did not know that Blackwood was Bowen's principal. The written freight contract which Mulara prepared on February 10 (Ex. 1) did not contain the name of Blackwood but showed Bowen as the contracting party.

Lobe had a notation that he informed Mulara on February 28 that Blackwood Hodge was involved. He testified that he "could have" mentioned Blackwood's name prior to January 30. He was "not sure." He did not recall when Mulara learned about the problems with General Motors; nor did he recall Mulara ever asking him who his principal was prior to February 28.

There is ample evidence to support the finding of the district court that, "At the time that Mularadelis was negotiating with Lobe and up to February 28th he knew that Bowen was acting as an agent, but he did not know the name of the principal, nor did he have reason to know it." The court continued: "In such circumstances, an agent for an undisclosed principal is liable for breach of a contract just as though he was the principal. Restatement, Second, Agency §§ 4, 321."

Restatement of Agency, 2d, § 4 reads in pertinent part:

"(2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal."

§ 321 reads:

"Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." [4]

This court has cited § 321 of the Restatement with approval in a number of cases (and followed the rule that the agent must disclose the name of his principal even prior to the First Restatement). The decisions in this circuit were summarized in Cleary Brothers v. Christie Scow Corporation, 215 F. 2d 740, 743–744 (2 Cir.1954):

"The case of Horan v. Hughes, D.C., 129 F. 248, affirmed by us at 129 F. 1005, involved a suit in admiralty where the defense was the same as the one asserted in the instant case. The trial court, in speaking of the agent, stated that, 'To maintain such a defense, he must prove that he disclosed the name of his principal. It is not sufficient that he was acting as agent, or that the other party to the contract supposed he was acting as agent, if he did not know who the principal was.' Judge Swan, in Dupont v. United States, 2 Cir., 83 F.2d 951, 953, affirmed 300 U.S. 150, 57 S.Ct. 391, 81 L.Ed. 570, declared the principle clearly as follows: 'Ordinarily, it is true, one who acts as an agent does not become personally bound on a contract which he makes for a disclosed principal; but if he fails to divulge the

4. The effect of § 321 is explained in comment a:
"(After referring to § 4) The fact that to the knowledge of the agent, the other party does not know the identity of the principal is of great weight in ascribing to the other party the intention to hold the agent liable either solely, or as a surety or co-promisor with the principal. The inference of an understanding that the agent is a party to the contract exists unless the agent gives such

complete information concerning his principal's identity that he can be readily distinguished. If the other party has no reasonable means of ascertaining the principal, the inference is almost irresistible and prevails in the absence of an agreement to the contrary.
"As stated in Section 147, in the absence of a manifestation to the contrary there is an inference of an intention to make the partially disclosed principal, as well as the agent, a party."

name of his principal; he does become a party to the contract. American Law Inst. Restatement of Agency, §§ 320–322.'

"The agent must disclose his principal at or before the time when the contractual agreement is made final. Judge Augustus N. Hand, in Propstra v. Dyer, 2 Cir., 189 F.2d 810, 812, remarked that, 'It appears settled that, in the absence of some custom or agreement of the parties to the contrary, *an agent is liable in a contract that is closed before the name of the principal is revealed to* the other contracting party for the latter is assumed to have relied on the agent's credit in making the agreement.' " (Emphasis in opinion.)

The New York Courts also have held in a long line of decisions that a person who enters into a contract as an agent without disclosing the name of his principal becomes liable thereon even though the agent is known to be acting for another. See e.g. Argersinger v. MacNaughton, 114 N.Y. 535, 21 N.E. 1022 (1889); McClure v. Central Trust Co., 165 N.Y. 108, 58 N.E. 777 (1900); Special Sections, Inc. v. Rappaport Company, 25 A.D.2d 896, 269 N.Y.S.2d 319 (3d Dept.1966). While it may be sufficient if the principal is sufficiently identified, rather than named, Unger v. Travel Arrangements, Inc., 25 A.D.2d 40, 266 N.Y.S.2d 715 (1st Dept.1966), "Knowledge of the real principal is the test, and this means actual knowledge, not suspicion." Ell Dee Clothing Co. v. Marsh, 247 N.Y. 392, 160 N.E. 651, 653 (1928).

Appellant contends, however, that in view of the nature of the transaction

Orient had "a duty to inquire concerning the name of Bowen's principal" and that while the district court recognized this issue during the trial his opinion "did not deal with it at all." Appellant argues that the duty to inquire applies with special force to freight forwarders, referring to the understanding "by all that freight forwarders act exclusively as agents for others" and to the customs and usages of the shipping industry generally.

█ It is clear that the district court recognized this issue and in fact called counsel's attention to the necessity of proof to support his contention that the custom in the industry or the nature of the transaction required a variation from the normal rule and imposed upon the carrier the duty to ascertain the name of the freight forwarder's principal.[5] Bowen failed to prove any custom or usage to establish such a duty. The mere fact that a freight forwarder acts "exclusively for others" is insufficient to impose this duty on the carrier.[6]

Appellants' reliance on P. D. Marchessini & Co. (New York), Inc. v. H. W. Robinson & Co. Inc., 287 F.Supp. 728 (S.D.N.Y.1967) aff'd 394 F.2d 121 (2 Cir.1968), is misplaced. While that case was also an action by an ocean carrier against a freight forwarder for breach of a contract of affreightment, the court was concerned with the question of whether the employee of the freight forwarder had apparent authority to enter into the contract on behalf of his employer. The court found that there was no actual authority and held that to rely

5. The court suggested that if there were merit in counsel's contention that under the circumstances there was a duty to ascertain the identity of the principal prior to entering into the agreement, there should be expert testimony that this was the "custom in the industry." (T–112–114)

6. Many of the cases involve agents who, like the freight forwarder here, act exclusively for others and draw no distinction between them and other agents.

For example, Argersinger v. MacNaughton, *supra*, concerned a commission merchant, 21 N.E. at 1022, and McClure v. Central Trust Co. a stock transfer agent. 58 N.E. at 778. See also: Meriden Nat. Bank v. Gallaudet, 120 N.Y. 298, 24 N.E. 994 (1890) ("banker and dealer in commercial paper"); Meyer v. Redmond, 205 N.Y. 478, 98 N.E. 906 (1912) (auctioneer); Goodman Products Corporation v. A. Lustig, Inc., 265 App.Div. 506, 39 N.Y.S.2d 660 (1st Dept. 1943) (broker).

upon apparent authority a "third party must be justified in his belief that the agent was acting within the scope of his authority" and that knowledge that he was simply acting as an agent "would cause a reasonable man in libelant's position to make further inquiry." 287 F. Supp. at 733, 734.

It is well settled that a party may rely upon the "apparent authority" of an agent only to the extent that it is "reasonable" to believe that the agent is authorized. Restatement of Agency 2d, § 8, Comment c. It is necessary in such a case to determine whether a reasonable man would inquire as to the purported agent's authority.[7]

 Here Lobe's actual authority to execute bookings on behalf of Bowen is conceded. Further, Albert E. Bowen, Jr. testified that while his employees were free to furnish the name of Bowen's principals upon request, they usually did not do so absent such request. Since the district court found that Mulara did not know, and did not have reason to know, the identity of Bowen's principal, the sole question becomes whether Mulara had a duty to request the principal's identity. This raises an entirely different issue from anything considered in *Marchessini*.[8] In view of the lack of proof as to a custom or agreement to the contrary, the law does not impose a duty of inquiry upon a person dealing with an agent of an undisclosed or partially disclosed principal.[9]

It is probably true, as Bowen argues, that if Mulara had made inquiry, he could readily have learned the name of Bowen's principal. Conversely, we can see no good reason why Lobe should not have disclosed the name of Bowen's principal on or before the date of the oral agreement or made a prompt disclosure after receiving a proposed written contract in which Bowen was named as the contracting party. By so doing the "harsh application" of the principles of law pertaining to undislosed principals of which appellant complains, could have been avoided.

We find nothing in the record to justify an exception to the well recognized rule that the duty is on the agent to disclose his principal and not on the contracting party to ascertain the name of the principal, even though he knows the agent is acting for another.

Affirmed.

---

7. "Apparent authority is based on the principle of estoppel." Where a person "holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny the agent's act was not authorized." Masuda v. Kawasaki Dockyard Company, 328 F.2d 662, 665 (2 Cir. 1964).

8. The district court recognized in its opinion that *Marchessini* is distinguishable,

saying: "Lobe's employer does not question his authority to make these bookings. *Cf.* P. D. Marchessini & Co. (New York) v. H. W. Robinson & Co. * *."

9. See 2 Williston on Contracts (3d Ed) §§ 285, 288; De Remer v. Brown, 165 N.Y. 410, 59 N.E. 129 (1901); Unger v. Travel Arrangements, Inc., supra; Stockholm v. All Transport, 1 Misc.2d 949, 154 N.Y.S. 2d 572 (Albany City Ct. 1956).