165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
METROBANK NATIONAL ASSOCIATION, formerly known as State Bank
of East Moline, Plaintiff-Appellant,
v.
SHEARSON LEHMAN BROTHERS, Incorporated and Wayne A. Wagner,
Defendants-Appellees.
 No. 97-3090.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 20, 1998.
Decided Oct. 15, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, Rock Island Division. No. 91 C 4051. Michael M. Mihm, Chief Judge.
 Before* Hon. WILLIAM J. BAUER, Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Metrobank National Association conducted securities transactions in a number of different accounts with Shearson Lehman Brothers. At least one of those accounts was in the name of Metrobank and was used for transactions on behalf of Metrobank. Two other accounts used by Metrobank were in the name of Metrocorp, Inc., the parent company of Metrobank which holds all of Metrobank's common stock. The Metrocorp account was set up to facilitate the purchase and sale of Metrocorp stock, and Metrobank's trust department conducted transactions through that account on behalf of its customers.
 
 
 2
 In 1986, Metrobank through its Metrobank account purchased municipal bonds rated "AAA" by Standard & Poor's at the time. By October 1990, that rating had sunk to "BB," which was below investment grade for banks. Metrobank filed suit against Shearson[1] seeking rescission of the purchase under Illinois securities law, see 815 ILCS 5/13A, and the case was removed to district court. Shearson responded by producing a Client Agreement signed in 1990 in which Metrobank agreed to submit any claims arising from its accounts to arbitration. After extensive briefing, the district court granted Shearson's motion to compel arbitration, and denied Metrobank's request under 28 U.S.C. § 1292(b) for an immediate appeal of that issue. The arbitrator ruled in Metrobank's favor, awarding it $80,000.00 plus interest and costs. Metrobank moved for confirmation of the arbitration award, which the district court granted. Metrobank then filed this appeal challenging only the district court's decision to compel arbitration.
 
 
 3
 Before proceeding to the merits, we must address Shearson's claim that Metrobank waived its right to challenge the arbitrability of the dispute when it asked the district court to confirm the arbitration award. Shearson contends that Metrobank should have moved to vacate the arbitration in order to preserve that argument. Metrobank responds that it had no viable challenges to the arbitrator's decision, given the deferential review accorded those decisions. It argues that it should not be required to bring a frivolous motion to vacate in order to preserve its right to appeal the arbitrability decision. In the context of this case, we conclude that Metrobank did not waive its right to appeal arbitrability by seeking confirmation of the arbitration decision.
 
 
 4
 The Supreme Court in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995), held that the issue of arbitrability should be decided by the court absent clear evidence that the contract entrusted that decision to the arbitrator. Neither party argues that the contract in the instant case required the arbitrator to decide whether the dispute was subject to arbitration. Thus, under First Options, the district court properly considered the arbitrability issue, with the aid of at least six memoranda by the parties on the subject. A motion to vacate the arbitrator's decision would have added nothing to the development of that issue. Moreover, Metrobank noted the prior arbitrability decision and the court's refusal to certify the appeal in its motion to confirm the arbitration award, and Shearson acknowledged at oral argument that it did not believe Metrobank was abandoning its challenge to the arbitrability at that time. When the arbitrability issue is properly decided by the district court, and the matter is argued and decided prior to arbitration, the party seeking review need not raise the issue again in a motion to vacate the arbitrator's decision in order to preserve the issue for appeal. In those circumstances, it is proper to request confirmation of the arbitration order, in order to obtain a final, appealable judgment. Having done so, Metrobank did not waive its right to appeal the arbitrability issue.[2]
 
 
 5
 We turn, then, to Metrobank's argument that the dispute was not subject to arbitration because the contract did not apply to the transaction in question. Ordinary principles of contract interpretation require us to first ascertain the intent of the parties from the four corners of the agreement itself. See Macrae v. Dolce, 671 N.Y.S.2d 530, 531 (App.Div.1998).[3] Moreover, we shall interpret a contract so as to "give effect to all its provisions and render them consistent with one another." Nielson v. Piper, Jaffray & Hopwood, Inc., 66 F.3d 145, 148 (7th Cir.1995) (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995)), cert. denied, 516 U.S. 1116 (1996). The contract submitted by Shearson was a Client Agreement which required that the "client" submit to arbitration "[a]ny controversy: ... relating to any of [client's] accounts maintained individually or jointly with any other party, in any capacity, with [Shearson]; or ... with respect to transactions of any kind executed by, through or with [Shearson]...." The dispositive issue, then, is identification of the "client" who is bound by this contract, and Metrobank concedes as much. Metrobank Reply Brief at 13 ("Deciding the identity of the 'Client' decides the case."). The contract itself identifies the client by requiring the "Client's signature" and "This Client's tax identification number ." The tax identification number written in the Client Agreement is indisputably that of Metrobank. The client signatures are those of Metrobank's president, Ben Ryan, and secretary, Gary Andersen. Because no other part of the contract identifies the client, this would seem to be dispositive of the issue.
 
 
 6
 Metrobank nevertheless asserts that Metrocorp, not Metrobank, is the client. In support, Metrobank points out that Ryan and Andersen were also president and secretary of Metrocorp at the time, and that the account number on the Client Agreement was that of the Metrocorp account. The problem with Metrobank's argument is that the contract lists only the "account number," not the "client account number." Nothing in the contract correlates the account number with the client. Although the account number identifies an account used by the client, it does not on its face provide a means of ascertaining the identity of the client in the Client Agreement. Moreover, although the signatures could be attributable to Metrobank or Metrocorp, the client tax identification number is solely attributable to Metrobank. Construing the terms in the contract as consistent with each other, the signatures are attributable to Metrobank, not Metrocorp. See Mastrobuono, 115 S.Ct. at 1219. Even if the account number and the dual roles of Ryan and Andersen created some ambiguity, the district court properly resolved the issue. The court's finding that Metrobank was the client is consistent with the representation of Metrobank's president Ryan, who acknowledged in an affidavit that Metrobank executed the contract, although he contends the contract was signed in Metrobank's capacity as agent for Metrocorp, not as a principal.
 
 
 7
 That brings us to Metrobank's final contention, that it cannot be bound on a transaction involving a different account when its execution of this contract was as an agent for a disclosed principal .[4] Nothing in the contract indicates that Metrobank signed as an agent, but Metrobank argues that Shearson knew the transactions were on behalf of others because Metrobank could not purchase Metrocorp stock for itself. Metrobank urges us, therefore, to treat Metrocorp as the principal. That position, however, is inconsistent with Metrobank's representations in its briefs and in affidavits that it acted as an agent of its customers in transactions through the Metrocorp account. That would make the customers, not Metrocorp, the principals on the contract. Metrobank's argument is thus internally inconsistent because it argues that Metrocorp is the principal but its signature would have been as agent for its customers, not Metrocorp. If we were to accept Metrobank's representations that Shearson knew it was acting on behalf of its customers, that assumption does not help Metrobank escape arbitration. Under New York law, which governs this Client Agreement, and the Restatement (Second) of Agency § 321, an agent who enters into a contract on behalf of a partially disclosed principal is liable on the contract. See New England Marine Contractors, Inc. v. Martin, 156 A.D.2d 804, 549 N.Y.S.2d 535, 536 (App.Div.1989); Orient Mid-East Lines v. Albert E. Bowen, Inc., 458 F.2d 572, 576 (2d Cir.1972) (citing the "long line of decisions" by New York courts holding an agent liable on contracts involving a partially disclosed principal). A principal is partially disclosed when the other party knows of the existence but not the identity of the principal. See id.; Restatement (Second) Agency § 4 (1958). Metrobank asserts that it signed the Client Agreement on behalf of its customers, but does not even now identify them. Therefore, Metrobank at best was acting on behalf of a partially disclosed principal in signing the Agreement, and is therefore liable under the Agreement. Because Metrobank is bound by the Agreement, the district court properly determined that the matter was subject to arbitration.
 
 
 8
 For the above reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 Judge Ilana D. Rovner, originally assigned as a panel member, determined after oral argument that her recusal was necessary. She took no further part in the consideration or decision of this case
 
 
 [1]
 The suit was filed against Shearson and Wayne Wagner, but neither party attempts to distinguish Wagner from Shearson or explain his relevance. Therefore, we shall refer to the defendants throughout this order as "Shearson."
 
 
 [2]
 Shearson also contends that Metrobank's challenge is barred by principles of res judicata and collateral estoppel. That argument is meritless because those defenses are inapplicable on direct appeal of the rulings in question
 
 
 [3]
 The Client Agreement provided that New York law governs and the parties have not argued otherwise
 
 
 [4]
 Metrobank relies on section 23(3) of the Client Agreement relating to agents. Metrobank contends that its actions as an agent are governed only by section 23(3) and not by any other provisions of the contract because that section explicitly discusses agents. Section 23(3), however, refers to the actions of Shearson's agents and not to the actions of Metrobank as an agent. The "you" referred to in section 23(3)'s phrase "your ... agents" is earlier defined as "Shearson." That provision is thus irrelevant to the liability of Metrobank under the agreement